**STATE of Tennessee, Appellant,**

v.

**Leonard MOSS, Defendant-Appellee.**

Supreme Court of Tennessee,
at Knoxville.

Oct. 20, 1986.

W.J. Michael Cody, Atty. Gen. and Reporter, Wayne E. Uhl, Asst. Atty. Gen., Nashville, for appellant.

Don W. Poole, Chattanooga, for appellee.

David L. Raybin, Tennessee Ass'n of Criminal Defense Lawyers, Nashville, for amicus curiae.

## OPINION

DROWOTA, Justice.

The issue in this case is whether the Sentencing Reform Act of 1982, as amended, embodies a policy that sentencing determinations should begin with the presumption that the minimum sentence should be imposed. Defendant, Leonard Moss, was convicted of second degree murder in the Hamilton County Criminal Court on September 27, 1984.

### I.

In the early evening of Friday, May 6, 1983, Defendant was observed by Chattanooga police officers driving at an extremely high rate of speed on a heavily traveled street in Chattanooga. Chattanooga Police Officer Lee Stewart estimated that Defendant was driving close to 100 miles per hour when he saw him. Officer Stewart attempted to give chase, with his lights and siren on, and despite reaching speeds of 55 to 60 miles per hour, he could not safely overtake Defendant. Officer Stewart saw Defendant driving recklessly, weaving in and out of traffic to pass cars. After unsuccessfully pursuing Defendant for about a mile, Officer Stewart slowed and tried to maintain sight of Defendant's car, noting that Defendant ran several traffic lights. When Officer Stewart initially observed Defendant, he had notified the police dispatcher of the situation. He finally lost sight of Defendant after approximately three miles.

Another Patrol Officer, Brian Bergenback, also observed Defendant speeding. He estimated the speed of Defendant's car to have been 70 to 80 miles per hour and accelerating. Officer Bergenback was unable to pursue Defendant safely and reported the sighting by radio. He continued to follow Defendant as long as he could. Having heard the reports on the radio, Chattanooga Police Investigator Doug

Gray and his partner, operating in an unmarked car, sighted Defendant's speeding car but they were not able to pursue him through the heavy traffic.

Despite pursuit by at least three police vehicles, two of which were marked cars running with their emergency equipment operating, Defendant continued to speed through the streets of Chattanooga over a distance of seven miles. As Defendant entered the intersection of Holtzclaw and Bailey against the red traffic signal, his car collided with that of Robert Formicola, who had the right of way through the intersection on the green light. Mr. Formicola's car was struck so forcefully on the passenger's side that it was thrown to the side of the intersection against a utility pole and traffic control box. Mr. Formicola was severely injured and died soon after the collision. Defendant was arrested and charged with reckless driving and driving under the influence of an intoxicant.

In indictments filed June 22 and July 27, 1983, Defendant was charged with violating the vehicle registration laws, operating a vehicle without a license, and with second degree murder. He was tried on March 13, 1984, and the jury convicted him of the vehicle and license violations but could not agree on a verdict in the second degree murder charge. Retrial on the second degree murder indictment was held from September 25 to 27, 1984. At this second trial, three of the pursuing police officers testified. Two other witnesses testified that Defendant had been seen by them traveling at a high rate of speed and had run a stop light at an intersection several miles from the scene of the collision. One of these two witnesses estimated Defendant's speed at 100 miles per hour. Two other witnesses saw the crash at the intersection of Holtzclaw and Bailey. Mr. Yunginger watched as Defendant's car entered the intersection and struck Mr. Formicola's car; he described the impact as being extremely violent, twisting the victim's car into a horseshoe shape and pushing the car to the side of the intersection. Parking his motorcycle, Mr. Yunginger attempted to assist the victim, who was unconscious, although still breathing, and bleeding profusely. When the police arrived shortly after the impact, Mr. Yunginger then went to see if he could help Defendant, whom he described as being very disoriented but otherwise apparently unhurt. At one point in his cross-examination, Mr. Yunginger described the Defendant's car as it entered the intersection as looking like a streak of lightning. The other eyewitness to the collision also emphasized the violence of the impact of the Defendant's car against the victim's.

Other witnesses testified for the State concerning the conditions at the scene of the wreck and their initial observations of Defendant. Chattanooga Police Officer Dan Willmon, who conducted the investigation at the scene, concluded from Defendant's behavior and appearance that he was under the influence of an intoxicant, although no officer was able to detect the odor of alcohol. State Trooper Dayton Harris was called to testify that Defendant had not had a valid driver's license since August 30, 1979.

The defense called two witnesses. A Chattanooga Fire Department Paramedic, John Vlasis, testified that, while he routinely made notations at an accident scene concerning indicated influence of intoxicants in injured persons, he made no such notes regarding Defendant because he saw no evidence that Defendant was under the influence of an intoxicant. The defense then called Tennessee Bureau of Investigation Toxicologist Samuel Manuel. He testified that he tested the blood samples drawn from Defendant at the direction of Officer Willmon and after two separate tests, he obtained negative results for the presence of alcohol or of the other drugs or intoxicants for which Defendant's blood had been tested.

Subsequent to the verdict of guilty on the second degree murder charge, the trial court held a sentencing hearing on October 24, 1984. The State presented one witness and offered among the documents submitted to the trial court the Defendant's driver's record. Defendant's driver's record showed that he had an extremely poor history of irresponsible and reckless

driving; at the time of this incident in 1983, his license had been indefinitely revoked since 1979. The pre-sentence report indicated that Defendant did not have a significant criminal record, although he had been arrested on two occasions, neither of which resulted in incarceration. The more serious charge had been dismissed and the disposition of a misdemeanor charge of loitering was unavailable. Defendant is a native of Chattanooga; he was about 23 years old at the time of the incident in 1983. He is single and was engaged to be married at the time of his trial; he has one child and his fiance was pregnant at the time of trial. Defendant has a high school education. Although unemployed at the time of the wreck, he had been previously employed on an as-needed basis with Chattanooga Glass Company. In addition, his father had been killed in a non-duty related argument with a police officer about 16 years before the trial of this case.

At the sentencing hearing, three witnesses testified for Defendant. His mother recounted his remorseful behavior and attitude since the collision and described some of his early family history. With his family's help, he had made restitution for the property damage caused by the wreck. She also described the injuries Defendant received in the collision. Two other witnesses testified that Defendant had shown remorse for having caused Mr. Formicola's death. The Defendant made an unsworn statement to the court, expressing his belief that God would forgive him and asked for mercy from the court.

The trial judge announced his sentencing decision, recognizing that degrees of culpability exist and had been provided for by the Legislature. He then determined that Defendant was a Range I, Standard Offender and calculated the applicable sentencing range at between ten and 35 years. The trial judge remarked that the Legislature had not provided much guidance concerning how the mitigating and enhancement factors in the Sentencing Reform Act

were to be weighed and stated that the Legislature:

"listed some things that could be considered by way of enhancement of punishment and some things that might be considered in mitigation. They did not make either list exclusive, and caused some difficulty in that respect. Nor did they say where you start [within the range], whether you start at the bottom and work up, or whether you start in the middle, or whether you start at the top and work down. And I may not start exactly at either place."

As enhancement factors, the trial court listed the vehicle and license violations, reckless driving, and the circumstances surrounding this offense, in which Defendant had driven at such excessive speeds through heavy traffic. Weighed against these factors, the court found as mitigating factors Defendant's social and family background and his remorse for the death of the victim.

In his sentencing deliberations, the trial court also noted that, although letters and testimony concerning the character of the victim had been submitted, he thought that such matters were irrelevant to determining the appropriate sentence for Defendant. He also rejected a preliminary psychological assessment of Defendant; this report had been obtained by Defendant's counsel for his first trial and primarily concerned Defendant's competency to stand trial and a possible drug abuse problem. The purposes of punishment and of the Sentencing Reform Act were also considered by the trial court. The trial judge then concluded that the appropriate sentence in this case was 20 years in the Department of Correction.[1] Sentences for the license and registration convictions were also imposed, to run concurrently.

On December 12, 1984, a hearing on Defendant's Motion for Judgment of Acquittal or a New Trial was held. The Motion raised a number of issues, including the

1. We note here that the trial court subsequently stated at the post-trial motions hearing that he had vacillated between 15 and 20 years and finally settled on 20 years as the appropriate sentence for this case.

propriety of the Defendant's sentence. On this issue, the trial court stated:

"Now, on the question of sentencing, I believe this is a case where I sort of used a presumptive sentence approach, that is, went halfway between the minimum and maximum for Range I, and then worked from that to the defendant's sentence, found some minor enhancing factors, and went from there. I had some difficulty with that. On the one hand, the sentencing law doesn't specifically authorize that, doesn't say anything about a presumptive sentence, or that approach, or doesn't intimate anything about it. But it is clear that for a person who is a standard offender that some sentences for second degree murder could go as high as 35 years, could be as low as ten years. The concept of enhancement factors and mitigating factors would indicate that if there are mitigating factors, the sentence ought to be lowered, and if there are enhancement factors, the sentence ought to be increased, but it doesn't say anything about a starting point. So if you start at the point of the minimum, then as a rhetorical question I say what do you do with mitigating factors. There's nothing you can do with mitigating factors, so you've got to start in your thinking somewhere above the minimum in order to apply the concept of mitigating factors, and you've got to start somewhere below the maximum in order to apply the concept of enhancement factors. But if you don't start at the minimum or maximum, then it appears to me that halfway in between is a good place to start, and that's what I did. But I'm not—I have no guidance on that approach...."

The Defendant's Motion was denied.

As part of Defendant's appeal as of right, the Court of Criminal Appeals conducted a *de novo* review of the sentence under the authority of T.C.A. § 40–35–402(d) (Supp.1986). The intermediate court concluded that the approach adopted by the trial court failed to consider certain provi-

---

**2.** T.C.A. § 40–35–111(10): that Defendant had no hesitation about committing a crime in

sions of the Sentencing Reform Act, which in their opinion embodied the policy that the starting point in all sentencing determinations would be the minimum sentence for the range involved, citing T.C.A. §§ 40–35–102 and 40–35–103(4). The mitigating and enhancement factors would then be weighed, first enhancing the sentence and then applying any mitigating factors. Finding that one enhancement factor was present[2] but that no mitigating factors applied, the Appellate Court, by a divided panel, reduced the sentence to 15 years. Judge Dwyer dissented, arguing that no presumptive sentence was intended by the Legislature and that the discretion of trial courts should not be unduly fettered absent a clear legislative directive. Both parties filed applications under Rule 11, T.R. A.P.; the Defendant's Application for Permission to Appeal was denied, but we granted the State's Application on the issue of whether the Sentencing Reform Act embodies a policy of presumptive sentencing. We now reverse the Court of Criminal Appeals and reject the rationales of both the trial court and the Court of Criminal Appeals regarding sentencing.

## II.

### A.

The majority of the Court of Criminal Appeals in this case concluded that T.C.A. § 40–35–103(4), which provides that "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," mandates that the minimum sentence be presumed the starting point within the appropriate range. The resolution of this issue lies in construing the Sentencing Reform Act (the Act), and "in construing a statute, all Sections are to be construed together in light of the general purpose and plan, evil to be remedied, and object to be attained...." *State v. Netto*, 486 S.W.2d 725, 729 (Tenn.1972).

which the risk to human life was great.

The Act states its purposes in T.C.A. § 40–35–102. This provision states that the punishment to be imposed is that which a defendant "deserves in relation to the seriousness of his offense." T.C.A. § 40–35–102(1). Although the purposes of sentencing are based on general principles, the Act can only be applied in an individual case to a particular person based upon the facts of that case and the circumstances of that defendant. The policy expressed is that the punishment imposed should fit the crime as well as the offender.

■ Among other purposes, the Act was passed to "[a]ssure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentences," T.C.A. § 40–35–102(2), which clearly implies that some disparity is justified, depending on the particular crime and the individual criminal. This is consistent with the case by case approach of the Act. Reasonable discretion in sentencing decisions is required to impose the sentence the defendant deserves in relation to the crime committed. T.C.A. § 40–35–102(1). Some unavoidable disparities will result in sentences, but each case will be treated fairly and consistently based on the procedures and principles that guide sentencing determinations and the assessment of the facts and circumstances presented in a specific case.

The purposes of the Act do not stop with these foregoing principles. T.C.A. § 40–35–102(3) states that the Act is also intended to "[p]revent crime and promote respect for the law...." These goals are to be achieved through general deterrence, confinement of repeat offenders (a form of specific deterrence), and rehabilitation.

Further, the general purposes of the Act, enumerated in T.C.A. § 40–35–102, are implemented by the sentencing considerations found in T.C.A. § 40–35–103. These considerations embody the controlling principles for reaching the sentencing decision in a particular case. To decide whether confinement is to be imposed, the sentencing court should consider whether confining the defendant "is necessary to protect soci- ety by restraining a defendant who has a long history of criminal conduct...." T.C.A. § 40–35–103(1)(A). *Cf.* T.C.A. § 40–35–102(3)(B). Even if this is not a compelling justification for incarceration, confinement may still be appropriate where it "is necessary to avoid depreciating the seriousness of the offense or ... is particularly suited to provide an effective deterrence to others likely to commit similar offenses...." T.C.A. § 40–35–103(1)(B). *Cf.* T.C.A. §§ 40–35–102(1) and 40–35–102(3)(A) (some conduct may be particularly suited to confinement not only because the offense and the offender are deserving of it but also because general deterrence is needed due to the nature of the offense [3]). Moreover, confinement may be appropriate for certain recidivists who have been past benefactors of other "[m]easures less restrictive than confinement...." T.C.A. § 40–35–103(1)(C). *Cf.* T.C.A. §§ 40–35–102(3)(B); 40–35–102(3)(C).

■ Nevertheless, whether imprisoned or sentenced by some other method, "[t]he sentence imposed should be no greater than that deserved for the offense committed." T.C.A. § 40–35–103(2). This provision makes it clear to us that a case-by-case approach to sentencing underlies this Act as a fundamental policy. An individual criminal is sentenced based on the nature of the offense and the totality of the circumstances in which it was committed, including the defendant's background. *Cf.* T.C.A. §§ 40–35–102(1); 40–35–102(2). Any case-by-case approach will embody discretion, since all of the appropriate factors and circumstances must be weighed and considered as a whole for the disposition of each case. But, "[i]nequalities in sentences that are unrelated to a purpose of this chapter should be avoided." T.C.A. § 40–35–103(3). The implication is that, while more uniformity of sentences is one goal of the Act ("the fair and consistent treatment of all defendants," T.C.A. § 40–35–102(2)), some justified disparity or inequality in sentences necessarily results from a case-by-case method by which an offender re-

3. *See State v. Michael,* 629 S.W.2d 13 (Tenn. 1982).

ceives the "sentence he deserves" but not a sentence "greater than that ... for the offense committed." *Compare* T.C.A. §§ 40–35–102(1) and 40–35–103(2) *with* T.C.A. §§ 40–35–102(2) and 40–35–103(3). T.C.A. § 40–35–103(3) also cautions a sentencing court to refrain from imposing a sentence based on passion, prejudice, revenge, or any other motive or reason inconsistent with the Act.

■ Considering the purposes for which sentences are imposed under this Act, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40–35–103(4). The Court of Criminal Appeals primarily relied on this provision in reaching its conclusion that the Act presumes that the minimum sentence is the starting point in sentencing determinations. This conclusion seems to us to give this section more weight than the other sections found in the same part of the statute and which sections require that a particular defendant receive the sentence he deserves in light of the seriousness of the offense committed and the totality of the circumstances surrounding the crime. The seriousness of the crime may justify some disparity in sentences that would be related to a purpose of the Act, such as general deterrence, restraint of recidivists, and the likelihood of rehabilitation for the individual offender before the sentencing court. In *State v. Mays*, 667 S.W.2d 512 (Tenn.Crim.App.1983), *permission to appeal denied* (Tenn.1984), the Court of Criminal Appeals previously rejected a similar argument concerning T.C.A. § 40–35–103: "The defendant says that T.C.A. § 40–35–103 requires a less severe sentence to achieve the purpose for which the sentence is imposed. His argument ignores the provisions of § 40–35–103(1)." 667 S.W.2d at 516. Similarly, in our opinion, any rationale of presumptive sentencing, whether like that adopted by the Court of Criminal Appeals or that of the trial court in this case, ignores the other provisions of the Act that expressly or implicitly permit disparities or inequalities in sentences related to a purpose of the Act. *See* T.C.A.

§§ 40–35–102(1), (2); 40–35–103(1)(B), (2), (3).

"As a general proposition Code provisions *in pari materia,* as here, must be construed together, and the construction of one, if doubtful, may be aided by the consideration of the words of and legislative intent indicated by the others. *Hickson v. State,* 196 Tenn. 659, 663, 270 S.W.2d 313 (1954)."

*Gallagher v. Butler,* 214 Tenn. 129, 137, 378 S.W.2d 161, 164 (Tenn.1964).

■ Consistent with the policies of this Act, T.C.A. § 40–35–103(5) provides that any "potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative *or length of term imposed.*" (Emphasis added). *Cf.* T.C.A. §§ 40–35–102(1), (3)(C); 40–35–103(1)(B), (C); 40–35–103(3). The language of T.C.A. § 40–35–103(5) permits the sentencing court to consider the social and psychological background or history of the defendant as part of the sentencing decision, but this language also assumes that the court has the necessary but guided discretion that a sentencing court would exercise in determining the length of sentence or type of sentence appropriate for a given defendant in a particular case. *Cf. State v. Windhorst,* 635 S.W.2d 706, 708 (Tenn.Crim.App.), *permission to appeal denied* (Tenn.1982) ("We also note that the criminal record and social history of the appellant were likewise properly considered by the trial judge. See *Moten v. State,* [559 S.W.2d 770 (Tenn. 1977)], and the cases cited therein."). *See* T.C.A. §§ 40–35–205; 40–35–207.

■ When the provisions of T.C.A. §§ 40–35–102 and 40–35–103 are read together, they clearly permit trial courts to exercise their discretion in determining the sentencing alternatives or the length of the term of confinement, allowing differences in sentences justified by the nature of the crime, the characteristics and history of the criminal, and the circumstances surrounding the particular offense involved. Approximate uniformity in sentencing is not the only policy contemplated by the Act; what is required, however, in every case is

"fair and consistent treatment" of defendants in reaching sentencing decisions.

The Act does not leave sentencing courts wholly unguided although it does allow some variegation among the sentences imposed. Sentencing courts are guided by classifications of types of offenders or offenses, available sentencing alternatives, and calculation of sentencing ranges. T.C.A. § 40–35–104 enumerates a series of combinations of confinement, fines, and rehabilitative probation; these vary from a fine to continuous confinement in the penitentiary.[4] Additional sanctions may be imposed pursuant to T.C.A. § 40–35–104(c) when authorized and appropriate. Perhaps no other provision so completely embodies the policy of guided discretion afforded by the Legislature to sentencing courts in this Act than does T.C.A. § 40–35–104.

■ Furthermore, the process of classifying offenders or offenses as well as of calculation of sentencing ranges provided for in T.C.A. §§ 40–35–105 (Supp.1986), 40–35–106 (Supp.1986), 40–35–107 (Supp.1986), 40–35–108, and 40–35–109 (Supp.1986), delimits the area within which sentencing discretion may be exercised. Discretion is further guided by consideration of the mitigating and enhancement factors in T.C.A. §§ 40–35–110 and 40–35–111. The Legislature has provided only for ranges within which a determinate sentence will be imposed and has not chosen to assign any controlling value to these mitigating and enhancement factors in how they are weighed in determining where within the appropriate range a particular defendant's sentence should fall. Such a statutory scheme grants the exercise of discretion to the sentencing court. Moreover, if the Legislature had desired to provide for any presumptions in sentencing determinations, T.C.A. § 40–35–105 shows that it was capable of using such language appropriately: "If the judgment of conviction does not indicate that the defendant was sentenced as a persistant offender, for an especially aggravated offense, or as a mitigated offender, it shall be presumed that the defendant was sentenced as a standard offender." T.C.A. § 40–35–105(c) (Supp. 1986).

A panoply of statutory provisions guides sentencing courts in the exercise of their discretion. A systematic application of these provisions of the Act cannot be reduced to a mechanical process or a formula; rather, these statutes entrust sentencing decisions to trial courts in the first instance. These courts, familiar with their locale and having seen the evidence and the defendant, as well as possessing the benefit of experience in sentencing matters, should retain that discretion necessary to achieve all of the purposes of the Act. Absent an explicit legislative directive to the contrary, such discretion will not be unduly restrained by presumptions not expressed in the Act.

### B.

■ The Sentencing Reform Act also sets out the procedure for imposing sentence. See T.C.A. §§ 40–35–201 through 40–35–214. These procedural requirements underwrite the purposes of the Act to "[a]ssure fair and consistent treatment of all defendants by ... establishing fair procedures for the imposition of sentences...." T.C.A. § 40–35–102(2).

Under T.C.A. § 40–35–203(a), upon a verdict or plea of guilty, the trial court is to hold a sentencing hearing at which evidence may be presented by the State or defendant concerning any issue relevant to sentencing. See also Rule 32, T.R.Crim.P. A record of the sentencing hearing must be preserved and "shall include specific findings of fact upon which application of the sentencing principles were based." T.C.A. § 40–35–209(c). The term "sentencing principles" refers to the preceding provisions of the Act, T.C.A. §§ 40–35–101 through 40–35–112.

These procedural requirements not only provide additional guidance to and restraint

---

**4.** T.C.A. § 40–35–103(6) (Supp.1986) encourages trial courts to use alternatives to incarceration, further focusing the exercise of discretion.

on the exercise of the sentencing court's discretion but they purposefully create a record for appellate review of sentences. T.C.A. § 40–35–210 intends that the sentencing court retains substantial, although guided discretion in sentencing determinations. This provision codifies the steps in determining the defendant's sentence using the sentencing principles articulated in T.C.A. §§ 40–35–101, *et seq. State v. Pride*, 667 S.W.2d 102 (Tenn.Crim.App. 1983), *permission to appeal denied* (Tenn. 1984), construed T.C.A. § 40–35–210.

First, the sentencing court determines the appropriate range and the type of offender or offense involved. Second, a court can impose only a determinate sentence under T.C.A. § 40–35–211, and "[t]o determine the specific sentence and the appropriate combination of sentencing alternatives that shall be imposed," the court considers: the evidence presented at trial as well as at the sentencing hearing; the "nature and characteristics of the criminal conduct involved;" any "[e]vidence and information offered by the parties on the mitigating and enhancement factors in §§ 40–35–110 and 40–35–111;" and the statement, if any, of defendant in his own behalf. In calculating the specific sentence, whether it should be in the upper or lower end of the range, mitigating or enhancement factors are weighed, but the Act does not attribute any particular value vis-a-vis how many years should be added or subtracted based on the presence of any of these factors. That no inherent value has been assigned to these factors is a further indication that the Legislature contemplated the exercise of guided but not fettered discretion on the part of the sentencing court. The weight afforded mitigating or enhancement factors derives from balancing relative degrees of culpability within the totality of the circumstances of the case involved. The crime cannot be considered apart from the criminal in making the sentencing decision.

■ T.C.A. § 40–35–211, which requires determinate sentences, does not indicate that the discretion of the sentencing court should be confined by any sentencing presumptions. On the contrary, T.C.A. § 40–35–211(2) permits the sentencing court to sentence a defendant to less than the minimum in certain cases if "in the opinion of the court the offense merits a lesser punishment...." Such a provision indicates that the Legislature did not intend to adopt an inflexible approach to sentencing. This general conclusion is bolstered by § 40–35–212, which grants the sentencing court substantial discretion to "determine where and under what conditions a sentence will be served as provided by law." *Cf.* T.C.A. §§ 40–35–102(3)(C); 40–35–103(5), (6) (Supp. 1986); 40–35–104; 40–35–306; 40–35–307; 40–35–308.

When a sentence is imposed, the court "shall place on the record either orally or in writing its findings of fact and reasons as required by § 40–35–209." T.C.A. § 40–35–210(c). In any case, the "sentence must be based on evidence in the record of the trial, the sentencing hearing, the pre-sentence report, and, in the case of an especially aggravated offense or a persistent offender, the statement filed by the district attorney general with the court as required by § 40–35–202." T.C.A. § 40–35–210(d), *Cf.* T.C.A. § 40–35–103(3).

We think that the Sentencing Reform Act intends that sentences should be considered on a case-by-case basis and that the sentencing court should exercise guided discretion within the terms of the Act. Nothing we have found in the Act indicates that any presumptive sentencing should be adopted at all. If such a method is intended, we think it should be expressly stated. Uniformity in sentencing is only one of the several, equally important purposes of this Act; each case has its differences and each defendant is considered individually.

### III.

■ The Sentencing Reform Act of 1982, as amended, now provides that "the appellate court shall conduct a de novo review on the record" and that "[s]uch

review shall be conducted without a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40–35–402(d) (Supp. 1986). Accordingly, this Court will conduct a *de novo* review of the record without any presumption that the sentencing determinations of either of the courts below were correct.

▮▮▮ We first consider the nature and circumstances of the crime. Defendant was convicted of second degree murder under T.C.A. § 39–2–211.[5] The penalty for this crime is prescribed by T.C.A. § 39–2–212, which states that a person so convicted shall receive no less than ten years and as much as life in the penitentiary. Defendant has neither a juvenile record nor a record of prior felony convictions; he cannot be classified as a persistant offender under T.C.A. § 40–35–106. Although his crime involved the death of the victim, it is not an especially aggravated offense within the meaning of T.C.A. § 40–35–107. Moreover, considering the nature and circumstances of the crime and in the absence of any extreme mitigating factors, Defendant may not be sentenced as an especially mitigated offender under T.C.A. § 40–35–108. Consequently, T.C.A. § 40–35–105 (Supp. 1986) applies and Defendant is to be sentenced as a Range I, Standard Offender.

The Range I sentence within which Defendant may be sentenced is between ten and 35 years in this case. T.C.A. §§ 40–35–109(a), (d)(1). In assessing the specific term of the sentence to be imposed, we consider the factors found in T.C.A. § 40–35–210(b), the sentencing considerations listed in T.C.A. § 40–35–103, and weigh the mitigating and enhancement factors enumerated by T.C.A. §§ 40–35–110 and 40–35–111. *See State v. Mynatt*, 684 S.W.2d 103, 105 (Tenn.Crim.App.), *permission to appeal denied* (Tenn.1984); *State v. Pride, supra*, 667 S.W.2d at 105–107.

▮▮▮ While Defendant does not have a long history of criminal conduct, we find that he must suffer some imprisonment "to avoid deprecating the seriousness of the offense." T.C.A. § 40–35–103(1)(B). Mr. Formicola's death was completely unnecessary and directly resulted from Defendant's inexcusable, reckless conduct in driving at extremely high speeds through crowded city streets. The consequences of such conduct should have been fully foreseeable to Defendant. Not only is Mr. Formicola's death serious enough in itself to justify confinement in this case, but, having examined "the deterrence factor in the context of [this] case," *State v. Michael, supra*, 629 S.W.2d at 15, confinement is necessary to provide general deterrence to others who might commit similar offenses. We have also considered Defendant's potential for rehabilitation. He appears from the record and the pre-sentence report to be a promising candidate for rehabilitative programs or treatment, but this factor does not weigh heavily enough in his favor to avoid the necessity for some period of confinement in the totality of the circumstances of this case.

▮▮▮ Moreover, although second degree murder is not a specific intent crime, we have examined the evidence and can find nothing that indicates with sufficient reliability that Defendant could not appreciate the risks of his conduct due to a mental disorder or other similar problem. The kind of patently reckless driving displayed in this case involves such a degree of disregard for the safety and lives of others that Defendant must be held to a high standard of responsibility. Even if Defendant did not consciously consider that his conduct would have such serious consequences, he did operate his vehicle without being licensed. In fact, his driver's record reveals that his license had been indefinitely revoked because of previous reckless driving and contributing to the cause of an

---

5. He was also convicted of vehicle offenses under T.C.A. §§ 55–4–101, *et seq.*, and 55–7–101, *et seq.* The sentences received for these convictions were wholly appropriate (a fine of $10.00 plus ten days in the workhouse on each violation) and are hereby affirmed, to run concurrently, without further discussion.

accident in which personal injury occurred. Since he was not permitted to drive at all, and given the reasons for the revocation of his license, we do not think that whether or not he contemplated the possible consequences of his conduct can weigh in Defendant's favor.

For the foregoing reasons, we do not find that T.C.A. § 40–35–110(2) [6] is applicable. Nevertheless, we do consider Defendant's background—the loss of his father at an early age, his lack of a felony record, and his potential for rehabilitation—as mitigating factors; further, his remorse for causing Mr. Formicola's death and his efforts at restitution are also mitigating factors. As for enhancing factors, the record does not show whether Defendant engaged in his high speed race through Chattanooga "to gratify [his] desire for pleasure or excitement," T.C.A. § 40–35–111(7), and thus we decline to apply this factor because the "sentence must be based on the evidence in the record" under T.C.A. § 40–35–210(d). In any case, Defendant's actions in traveling at speeds of up to 100 miles per hour, driving recklessly, running several traffic control signals, and refusing to heed pursuing police officers, show that he "had no hesitation about committing a crime when the risk to human life was high." T.C.A. § 40–35–111(10).

Mitigating and enhancement factors are not assigned any particularized weight or value because each may carry differing degrees of weight depending on all of the circumstances of the defendant and the crime itself. They are attributed varying significance in any given case and cannot be assigned any standard equivalence of years to be added or subtracted from sentences based on the presence or absence of such factors. Every case is judged on its own merits. Consideration of similar cases and circumstances is not inappropriate in determining the specific length of sentence or the value of the factors found by the sentencing court in a given case. Such consideration assists in the fair and consistent treatment of defendants and contributes to proportionate sentences, but these cases would not necessarily be controlling. See T.C.A. §§ 40–35–102(2); 40–35–103(3).

Accordingly, in view of the crime for which Defendant has been convicted and the circumstances in which it was committed, weighing the mitigating and enhancement factors, and given the conclusion that some period of incarceration is appropriate in this case, we are of the opinion that a sentence of fifteen (15) years would "be no greater than that deserved for the offense committed," T.C.A. § 40–35–103(2), and would "be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40–35–103(4).

We reiterate that, unless otherwise expressly provided, the Sentencing Reform Act does not contain any form of presumptive sentencing, either such as that employed by the trial court or that utilized by the Court of Criminal Appeals. The sentencing court is to exercise statutorily guided discretion in assessing the appropriate sentence for the case before it. We, therefore, sentence Defendant pursuant to T.C.A. § 40–35–402(d) (Supp.1986) to fifteen (15) years, as a standard offender. The costs are taxed to the State.

BROCK, C.J., and FONES, HARBISON and COOPER, JJ., concur.

6. Defendant did not contemplate that serious injury would result from his conduct.