**STATE of Tennessee, Appellee,**

v.

**James BOLING, II, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 6, 1990.

Permission to Appeal Denied by Supreme Court Nov. 19, 1990.

Charles W. Burson, Atty. Gen. & Reporter, Amy L. Tarkington, Asst. Atty. Gen., James Gass, Asst. Dist. Atty. Gen., for appellee.

James D. Hutchins, Dandridge, for appellant.

## OPINION

HERSCHEL P. FRANKS, Special Judge.

James Maxwell Boling, II, was convicted by a Jefferson County jury of second-degree burglary and petit larceny. Finding Boling to be a persistent offender, the trial court imposed concurrent Range II terms of twelve and three years, respectively. On appeal, Boling asserts a violation of the clergy-penitent privilege and contests the length of his sentence.

The judgment is affirmed.

Boling moved pretrial to suppress his admissions, made to Dennis Rimmer, on the ground of the clergy-penitent privilege.[1]

The proof adduced at the suppression hearing established that Dennis Rimmer is very active in religious affairs. In addition to his secular career, he is licensed to preach at his church, Swann's Chapel Church.[2] Rimmer also preaches on occasion at other area churches.

Boling and Rimmer are close friends, and Boling regularly attended Swann's Chapel Church.

The trial judge denied Boling the benefit of the privilege because, in the judge's opinion, Boling's inculpatory statement was not made to Rimmer in his clerical capacity. Instead, he ruled, it emanated from the closeness of the relationship between them as Christian friends.

The pertinent statute, Tennessee Code Annotated, § 24-1-206, provides as follows:

(a)(1) No minister of the gospel, no priest of the Catholic Church, no rector of the Episcopal Church, no ordained rabbi, and no regular minister of religion of any religious organization or denomination usually referred to as a church, over the age of eighteen (18) years, shall be allowed or required in giving testimony as a witness in any litigation, to disclose any information communicated to him in a confidential manner, properly entrusted to him in his professional capacity, and necessary to enable him to discharge the functions of his office according to the usual course of his practice or discipline, wherein such person so communicating such information about himself or another is seeking spiritual counsel and advice relative to and growing out of the information so imparted.

(2) It shall be the duty of the judge of the court wherein such litigation is pending, when such testimony as prohibited in this section is offered, to determine whether or not that person possesses the qualifications which prohibit him from testifying to the communications sought to be proven by him.

(b) The prohibition of this section shall not apply to cases where the communicating party, or parties, waives the right so conferred by personal appearance in open court so declaring, or by an affidavit properly sworn to by such a one or ones, before some person authorized to administer oaths, and filed with the court wherein litigation is pending.

(c) Nothing in this section shall modify or in any wise change the law relative to "hearsay testimony."

(d) Any minister of the gospel, priest of the Catholic Church, rector of the Episcopal Church, ordained rabbi, and any regular minister of religion of any religious organization or denomination usually referred to as a church, violating

---

1. The minister, in his testimony, quoted the defendant as saying, "I went into her house and took a brick and tore up the washing machine that I had bought her."

2. The record of the suppression hearing gives no indication of denominational affiliation.

the provisions of this section, shall be guilty of a misdemeanor and fined not less than fifty dollars ($50.00) and imprisoned in the county jail or workhouse not exceeding six (6) months.

Under the statute, communications are privileges which are made to a clergyman in his professional capacity in the course of his practice or discipline, as established by the rules or customs of his religious organization or denomination when the communicator is seeking spiritual counseling and advice.

We conclude the requirements of the statute are met to establish the communications are privileged. Rimmer is a licensed minister of the gospel, over eighteen years of age, and the information was communicated by the defendant in a confidential manner to Rimmer, who was acting in his professional capacity in the furtherance and discharge of his functions as a minister.

The minister initiated the contact and transported the defendant to a motel and inquired "Are you having problems?". The minister accompanied the defendant to the motel room and explained he intended to give "comfort to him" since the defendant was "really burdened down". Rimmer further testified he didn't distinguish between being the defendant's minister or friend on that occasion. He explained he counselled the defendant to put his trust in God and assured that "God will not fail". The minister also testified he believed the defendant when defendant expressed his belief that the "Lord" had sent the minister to him.

At the preliminary hearing, the minister explained that he and the defendant would talk about the Lord regularly when they were together. The minister preaches in the church defendant attended and, while the evidence does not delineate the minister's duties, it may be reasonably inferred that the minister's "course of his practice or discipline" is highly informal in nature and this informality is reflected in his relationship with the defendant and other church members. Clearly, the minister in-

quired of defendant's troubles, consoled him and counselled him to put his faith in God and the defendant felt the minister was God's emissary. The evidence preponderates against the trial judge's determination that the intercourse between the defendant and the minister was due to their friendship.

■ We hold the communications to the minister to be privileged; however, on this record the error in admitting the evidence is harmless beyond a reasonable doubt. *State v. Cauthern*, 778 S.W.2d 39 (Tenn. 1989). Subsequent to Rimmer's testimony, the defendant testified in detail as to his activities:[3]

*Q.* And you got down in there and the washing machine was in the basement, wasn't it?

*A.* Right. . . .

*Q.* And you took a brick, I believe you said, is that right?

*A.* A block.

*Q.* A block and you knocked some parts off that washing machine?

*A.* The top controls.

*Q.* The top part. Was it the frame and what else did you knock loose while you were down there?

*A.* That's it.

*Q.* [And you] Took that with you when you left.

*A.* Yes.

■ When a defendant challenges the length, range or manner of service of his sentence, it is the duty of this court to conduct a *de novo* review without a presumption of correctness. Tenn.Code Ann. § 40–35–402(d) (Supp.1988). In reaching this determination, we must consider (1) any evidence received at the trial and/or sentencing hearing, (2) the pre-sentence report, (3) the principles of sentencing, (4) the arguments of counsel relative to sentencing alternatives, (5) the nature and characteristics of the offense, (6) any mitigating or enhancing factors, (7) any statement made by the accused in his own behalf, and (8) the accused's potential or lack of poten-

---

**3.** Statutory privileges may be waived. *See* 81 Am.Jur.2d, *Witnesses,* § 291.

tial for rehabilitation or treatment. *State v. Moss*, 727 S.W.2d 229 (Tenn.1986).

The proof adduced at trial established that Jane Lindsay and Boling began dating in January, 1988. He proposed marriage, but Ms. Lindsay asked for time to consider. She decided in June, 1988 to reject the proposal and terminate the relationship.

Boling, miffed by her rejection, refused to accept this decision and continued to pursue her. As part of this effort, Boling gave her a washing machine for her birthday. She did not want the machine but accepted it anyway.

In August, Boling broke into the victim's home and vandalized the washing machine he had given her. He also removed parts from it and took them with him.

We have reviewed the sentences *de novo*. In view of the defendant's status as a persistent offender and his apparent failure to rehabilitate himself, we find the sentences imposed by the trial judge to be appropriate, and we adopt them as our own.

BIRCH and REID, JJ., concur.