IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

APRIL 1997 SESSION

FILED

July 31, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 01C01-9607-CR-00314 |
| Appellee, | * | DAVIDSON COUNTY |
| VS. | * | Hon. Donald Harris, Special Judge |
| REGINOL L. WATERS, | * | (Official Misconduct; Theft over $10,000) |
| Appellant. | * | |

For Appellant:

Jeffrey A. Devasher
Assistant Public Defender
1202 Stahlman Building
Nashville, TN 37201

For Appellee:

Charles W. Burson
Attorney General & Reporter

Ruth Thompson
Counsel for the State
450 James Robertson Parkway
Nashville, TN 37243-0493

Katie Miller
Assistant District Attorney General
Washington Square
222 Second Avenue, Suite 500
Nashville, TN 37201-1649

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

The defendant, Reginol L. Waters,[1] pled guilty to one count of official misconduct and one count of theft over $10,000 and received one- and four-year sentences respectively. The trial court ordered the defendant to serve ninety days in the Davidson County Workhouse before placement on a Community Corrections program.

In this appeal of right, the defendant claims that the trial court erred by requiring any of the sentence to be served. We find no error and affirm the judgment of the trial court.

The facts supporting the official misconduct conviction are summarized in the presentence report. The defendant had been employed as an automobile emissions testing agent. On December 11, 1993, after inspecting the personal vehicle of a police officer, the defendant informed the officer that he could get the vehicle passed "for a price." The officer informed his supervisor of the incident and, a few days later, Vice Officer Greg Jones began an investigation. He first had a vehicle tested several times for emissions; it consistently failed to meet standards. Jones then took the vehicle for inspection by the defendant, who confirmed the vehicle did not meet the established guidelines. The defendant then offered to "pass" the vehicle for twenty-five dollars. Jones gave the defendant the money and left. Upon his return, the defendant provided certification papers even though the vehicle had not been examined.

The factual basis for the theft conviction are also summarized in the

---

[1]The defendant was charged in two separate indictments. The misconduct indictment lists the defendant's name as "Reginol L. Waters" and the theft indictment as "Reginol Leon Waters."

2

presence report. On October 3, 1994, the victim, Thomas Shriver, was returning to his apartment during the early hours of the morning, when he passed by the defendant, who was walking toward the parking lot. When he entered his residence, the victim realized that several items, including a computer, were missing. The victim tried to stop the defendant, who was driving away in a gray 1988 Mazda pickup truck. The victim reported the incident to police, who, within minutes, made an arrest. The stolen items were in the truck. The victim, when called to the scene, identified the defendant and the items taken in the burglary. The defendant confessed but explained to police that a person named John had instructed him to go to that apartment and pick up the items; he claimed that John, who said his wife lived at the apartment, told him that the items would be out on the patio. The defendant could not recall John's last name and was unable to remember the address John had provided. After the defendant was transported to jail, police found a gold necklace belonging to the victim in the defendant's shoe.

The defendant, thirty-three years of age at the time of sentencing, testified that he graduated from high school, spent four years in the Navy, and had received an honorable discharge. Thereafter, he worked for the post office but was fired in 1992 due to cocaine and marijuana use. During that time, he developed a $500 to $1000 per day cocaine habit. He was treated for the addiction but quit the program after ten days. Afterward, the drug problem became more severe. From 1992 until 1994, the defendant held a variety of temporary jobs. In 1994, he had some success as a self-employed painter and had recently acquired a $20,000 contract.

The defendant claimed that he had solicited bribes while employed as a testing emissions agent to support his drug habit. He continued to assert that the

theft was at the direction of his friend John, who explained that his wife's order of protection precluded his picking up the items himself. The defendant claimed John agreed to pay him $100 to collect the items. The defendant explained that he went to the apartment at an unusual hour because he believed the items were on the patio and it had begun to rain. The defendant insisted that he had found the gold necklace on the ground and had kept the necklace to assure John would pay him. Despite his version of events, the defendant conceded that he knew taking the items was "somehow not legitimate."

After his arrest, the defendant underwent drug treatment at the Veteran's Hospital. He finished the thirty day program and had been drug free until the imposition of sentence. He testified that he began using illegal drugs at age nineteen, while he was in the navy and that drug use was very common among enlisted men. At the time of the theft, the defendant was on probation for a misdemeanor offense unrelated to these charges. He had been released on bail on the official misconduct charge.

When a challenge is made to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the

4

nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210.

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are, of course, presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

Among the factors applicable to consideration for an alternative sentence are the circumstances of the offense, the defendant's criminal record, social history and present condition, and the deterrent effect upon and the best interest of the defendant. State v. Grear, 568 S.W.2d 285 (Tenn. 1978). The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn.1990). That the defendant meets the minimum requirements of the Community Corrections Act of 1985, however, does not mean that he is entitled to be sentenced under the act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App.1987). The following offenders are eligible for Community Corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 2 [repealed], parts 1-3 and 5-7 or title 39, chapter 13, parts 1-5;

5

(3) Persons who are convicted of nonviolent felony offenses;

(4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(6) Persons who do not demonstrate a pattern of committing violent offenses;  and

(7) Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

In Ashby, our supreme court encouraged the grant of considerable discretionary authority to our trial courts in matters such as these.  823 S.W.2d at 171.  See State v. Moss, 727 S.W.2d 229, 235 (Tenn.1986).  "[E]ach case must be bottomed upon its own facts."  Taylor, 744 S.W.2d at 922.  "It is not the policy or purpose of this court to place trial judges in a judicial straight-jacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers."  Ashby, 823 S.W.2d at 171.

In sentencing the defendant, the trial court made the following observations:

He's entitled to the presumption ... [that he] is a favorable candidate for alternative sentencing.  In this case he was on probation at the time this offense or these offenses were committed and that's certainly a sentencing consideration ....  But another sentencing consideration this Court deems important is the potential or lack [of] potential for rehabilitation.

Mr. Waters, I believe that one of the main things that you or any one person can do to show that you can be rehabilitated, is to come into this court and tell the truth.  I'm going to be honest with you, if you had come in here and told me that you planned the burglary of this home and that you broke in and you took these things

6

and you put them in your truck and you got caught, I would feel a lot better about you than I do. Instead, you tell this story about someone whose last name you don't know named John, phoning you and telling you that he had been put out of his home and you get this report and 8:00 at night and you decide at 3:30 in the morning that you're going to go over to this home and pick up those things.

And I tried to give you an opportunity to tell me the truth. ... I think that's a significant factor in determining whether you really are earnest in your efforts to be rehabilitated.

The defendant was eligible for an alternative sentence and, of course, received one. Lack of candor, however, has traditionally been a valid reason for denying immediate probation. State v. Poe, 614 S.W.2d 403 (Tenn. Crim. App. 1981). Untruthfulness suggests a lack of amenability towards rehabilitation. State v. Bunch, 645 S.W.2d 158 (Tenn. 1983). The defendant's version of the theft was, in a word, incredible. That the defendant was on probation when he committed the theft is also an unfavorable factor. A period of incarceration is appropriate where "[m]easures less restrictive than confinement have ... recently been applied unsuccessfully ...." Tenn. Code Ann. § 40-35-103(1)(C).

The judgment is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
David H. Welles, Judge


_____
Curwood Witt, Judge

7