IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MARCH 1999 SESSION

FILED

July 30, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 03C01-9803-CC-00114 |
| Appellee, | * | BLOUNT COUNTY |
| VS. | * | Hon. D. Kelly Thomas, Jr., Judge |
| CHRIS RUBLE TEFFETELLER, | * | (Aggravated Burglary and Theft) |
| Appellant. | * | |

For Appellant:

Julie A. Martin, Attorney
P.O. Box 426
Knoxville, TN  37901-0426
(on appeal)

Mack Garner
District Public Defender
419 High Street
Maryville, TN  37804

For Appellee:

John Knox Walkup
Attorney General and Reporter

Clinton J. Morgan
425 Fifth Avenue North
Cordell Hull Building, Second Floor
Nashville, TN  37243-0493

Charles Carpenter
Assistant District Attorney General
Blount County Courthouse
363 Court Street
Maryville, TN  37804

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

<u>OPINION</u>

The defendant, Chris Ruble Teffeteller, entered pleas of guilt to aggravated burglary and theft in excess of $1,000.00. The trial court imposed a Range I, four-year sentence for aggravated burglary and a Range I, three-year sentence for the theft. After serving six months in jail, the defendant was allowed to spend the remainder of each of the sentences in the community corrections program.

In this appeal of right, the single issue presented by the defendant is whether the trial court erred by refusing to grant the entire sentence to be served in the community corrections program. We find no error and affirm the judgment of the trial court.

On or about April 26 of 1997, the defendant entered the residence of the victim, Lillard Earle Ailor, and stole furniture, appliances, tools, building supplies, a bicycle, and a boat trailer. The victim saw the defendant leaving the scene and noted his license plate number. Afterward, the defendant turned himself in to the authorities.

While admitting his crimes, the defendant blamed his actions on serious marital difficulties arising from his drug and alcohol addiction. He explained that he was not living at home, had no place to go, and was stealing in order to support his addiction.

At the time of the sentencing hearing, the defendant, age thirty-three, was married and had two children. While he had dropped out of high school, he had obtained a GED and had worked primarily in construction. Since his arrest, the

2

defendant had obtained a commercial driver's license and had developed plans to become a truck driver. He had a history of heavy drinking since he was a teenager and usually consumed about one case of beer per day. By the time of these offenses, his cocaine habit cost between $400.00 and $500.00 per week. Theft was his source of income. After the commission of these crimes, the defendant voluntarily sought inpatient treatment for his addiction. A drug screen about a week before the sentencing hearing had yielded negative results.

The defendant had several prior offenses, many of which were drug and alcohol related. His record included public intoxication, three convictions for driving under the influence, possession of marijuana, driving on a revoked license, harassment, two misdemeanor thefts, and two third degree burglaries. Since his arrest, a domestic altercation with his wife resulted in his guilty plea and a fine. The trial court, in pertinent part, ruled as follows in ordering sentences one year above the minimum and denying immediate probation or community corrections:

> The enhancing factor that I used in raising this from the minimum was the record of past convictions and criminal activity. I considered the fact that this didn't involve any personal injury in mitigation....
> In deciding whether it should be served on release or in confinement, split confinement, periodic confinement, Community Corrections, [or] Department of Correction[], I looked at the nature of the offense, looked at your record, listened to your testimony, [and] considered the fact that you've been back in treatment since these happened back in April of [19]97.
> I have tried to evaluate your situation as far as rehabilitation and likelihood of re-offending. That's a mixed bag. You went through treatment, that is in your favor. You've been working, that is in your favor. You committed a misdemeanor assault several months down the road. That's definitely not in your favor. Your history is not in your favor.

Because the defendant's criminal behavior had extended over a period of fourteen to fifteen years, the trial court determined that a sentence absent some

3

period of confinement would depreciate the seriousness of the offenses. A six-month sentence to jail followed by a community corrections program was deemed to be the appropriate alternative sentence.

The defendant now argues that because he had been candid about his involvement in the offenses and had taken positive steps towards his rehabilitation from his addiction, the trial court should have granted immediate release on community corrections. He insists that he can stay out of trouble so long as he remains on the "sobriety wagon." He argues that jail overcrowding is rampant and that should have been given more consideration by the trial judge.

When a challenge is made to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210.

In calculating the sentence for felony convictions committed before July 1, 1995, the presumptive sentence is the minimum within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c) (1990) (amended July 1, 1995 to provide that the presumptive sentence for a Class A felony as the midpoint in the range). If there are enhancement factors but no mitigating factors, the trial court may set the sentence above the minimum. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210. The sentence may then be reduced within the range by any weight assigned to the mitigating factors present. Id.

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are, of course, presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

Among the factors applicable to consideration for an alternative sentence are the circumstances of the offense, the defendant's criminal record, social history and present condition, and the deterrent effect upon and the best interest of the defendant. State v. Grear, 568 S.W.2d 285 (Tenn. 1978). The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The community corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith,

5

787 S.W.2d 340, 342 (Tenn. 1990). That the defendant meets the minimum requirements of the Community Corrections Act of 1985, however, does not mean that he is entitled to be sentenced under the act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987). The following offenders are eligible for community corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 2 [repealed], parts 1-3 and 5-7 or title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of nonviolent felony offenses;
>
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (6) Persons who do not demonstrate a pattern of committing violent offenses; and
>
> (7) Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

In Ashby, our supreme court encouraged the grant of considerable discretionary authority to our trial courts in matters such as these. 823 S.W.2d at 171. See State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986). "[E]ach case must be bottomed upon its own facts." Taylor, 744 S.W.2d at 922. "It is not the policy or purpose of this court to place trial judges in a judicial straight-jacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers." Ashby, 823 S.W.2d at 171.

Here, the trial court carefully considered each and every factor before imposing a sentence. In our view, the sentence is fair and just under the circumstances and gives recognition to the defendant's efforts towards rehabilitation. A jail term of six months under these circumstances is entirely appropriate.

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
Norma McGee Ogle, Judge


_____
Cornelia A. Clark,  Special Judge