IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 25, 2011

**STATE OF TENNESSEE v. JOHN M. BAILEY**

**Appeal from the Circuit Court for Jefferson County**
**Nos. 10188, 10203    O. Duane Slone, Judge**

**No. E2010-00681-CCA-R3-CD - Filed April 15, 2011**

The Defendant, John M. Bailey, pled guilty to aggravated assault, a Class C felony, and failure to appear, a Class E felony. See T.C.A. §§ 39-13-102 (Supp. 2009) (amended 2010), 39-16-609 (2010). He was sentenced as a Range III, persistent offender to ten years' confinement for aggravated assault and a consecutive four-year sentence for failure to appear. On appeal, he contends that the trial court erred during sentencing by affording undue weight to enhancement factors and by failing to apply mitigating factors supported by the evidence. Without the guilty plea hearing transcript, we presume the trial court's determinations were correct. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., J., joined. NORMA MCGEE OGLE, J., concurs in the result.

John T. Sholly, Knoxville, Tennessee, for the appellant, John M. Bailey.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; James Dunn, District Attorney General; and Charles Murphey, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the Defendant and another man's attacking the victim, Daniel Cole, during a dispute over oxycodone. The record on appeal does not contain a transcript of the guilty plea hearing, but the record reflects that the Defendant entered his guilty pleas on September 21, 2009.

At the sentencing hearing, Daniel Cole testified that on August 15, 2009, he went to the Defendant's home to retrieve prescription oxycodone pills the Defendant stole from him. He said that the Defendant invited him into his home to retrieve the medicine but that the Defendant did not give him the pills. He told the Defendant he would let the police resolve the situation and started to leave. He said that he was hit from behind as he reached for the door, that his arms were held behind his back, and that he was repeatedly hit. He said the Defendant, the Defendant's wife, and another man attacked him. He said that the Defendant's children were present during the attack and that he "could see blood splatter on [the] two children." He said the attack left him "crippled" and unable to work. He said his skull was cracked, his arm broken in two places, and his elbow "shattered." He said that he could no longer use his left arm and that he suffered from memory loss and nightmares. He said that his injuries required operations, that his medical bills exceeded $40,000, and that he did not have health insurance.

On cross-examination, Mr. Cole testified that he did not know how many oxycodone pills the Defendant stole from him. He said he obtained a prescription for the pills after experiencing a neck injury that caused a herniated disk. He said he used the medication daily to treat the pain associated with his neck injury. He said that at the time of the attack, he had recently been laid off from Clayton Homes and that he previously owned his own business for more than thirty years. He said that he was no longer receiving unemployment benefits and that he applied for disability benefits. He said that he was able to work for a year after he injured his neck, but that he could no longer work because the attack left him "100 percent disabled."

The Defendant testified that his wife, two children, and a friend were at his home when Mr. Cole arrived. He said they were not able to testify at the hearing because his friend died, his children were too young, and his wife was "on the run and out of state." He agreed his wife called 9-1-1 shortly after the attack. He said he hit Mr. Cole because he feared for his life and the lives of his wife and children after Mr. Cole "broke loose" and came after him. He said he caused Mr. Cole physical harm and admitted he overreacted. He said he was "overmedicated" at the time of the attack.

The Defendant testified that he received disability benefits but that the benefits stopped while he was incarcerated. He said that he had a learning disability and that he was involved in a traffic accident that "crushed" his back. He said he applied for admission to the New Hope Program, an addiction recovery center, to treat his addiction to pain pills and get his life "straightened out." He said that he was sorry for causing Mr. Cole harm and that he wanted to assist him with his medical bills. He admitted he was not in a position to make restitution payments because he was not currently receiving disability payments.

On cross-examination, the Defendant agreed that he had over twenty-four theft convictions, that he had been on probation since 2005, and that he violated his probation twice. He said that he did not buy or take Mr. Cole's pills and that he did not invite Mr. Cole to his home. He agreed that the police came to his home and that he spoke with them. He did not know if his wife spoke with the police. He agreed that he and his friend were charged after the attack and that Mr. Cole was not charged. He agreed he overacted and said he was under the influence of oxycodone pills during the attack. He said he had a prescription for the pills. He agreed he wanted to be placed on probation in order to pay Mr. Cole's medical bills. He said he had been paying twenty-five dollars per month toward restitution for his twenty-four theft convictions. He said that he was not employed but that he would pay restitution if he received disability benefits. On re-direct examination, the Defendant agreed that his ability to regain custody of his children depended on the outcome of his sentencing.

The trial court found that the following enhancement factors applied pursuant to Tennessee Code Annotated section 40-35-114 (2010): (1) the Defendant had a previous history of criminal convictions, in addition to those necessary to establish the appropriate range, and (13) the Defendant was released on probation at the time the felony was committed. The trial court found that no mitigating factors applied. The Defendant was sentenced as a Range III, persistent offender to ten years' confinement for aggravated assault and a consecutive four-year sentence for failure to appear. This appeal followed.

In conducting a de novo review, we must consider (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2010); see State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

Preliminarily, we note that the weighing of enhancement and mitigating factors is within the sole discretion of the trial court. See State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008). In any event, the record is inadequate for a proper review because it does not contain a transcript of the guilty plea hearing. On appeal, the Defendant was required to prepare a record that conveyed a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of the appeal. T.R.A.P. 24(b); State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). The 1989 Sentencing Act, as amended, requires a sentencing court to consider evidence received at the trial. T.C.A. § 40-35-210(b)(1). With a guilty plea

involving a felony, the evidence supporting the plea and finding of guilt is usually submitted by stipulation. "For those defendants who plead guilty, the guilty plea hearing is the equivalent of trial . . . ." State v. Keen, 996 S.W.2d 842, 843 (Tenn. Crim. App. 1999).

This court considers the guilty plea hearing transcript to be vital to a de novo review and potential resentencing by this court as required by law. See id. at 844; see also T.C.A. §40-35-401 (2010). The "'failure to include the transcript of the guilty plea hearing in the record prohibits the court's conducting a full de novo review of the sentence under [Tennessee Code Annotated section] 40-35-210(b).'" State v. Farmer, 239 S.W.3d 752, 756 (Tenn. Crim. App. 2007) (quoting State v. Shatha Litisser Jones, No. W2002-02697-CCA-R3-CD, Madison County, slip op. at 4 (Tenn. Crim. App. July 14, 2003)). No matter how developed a record may appear, this court cannot know its full extent unless the guilty plea transcript is included. "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); see also State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE