IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 14, 2002 Session

## STATE OF TENNESSEE v. DANIEL JAMES COSGROVE

**Appeal from the Circuit Court for Bedford County**
**No. 14878     William Charles Lee, Judge**

_____

**No. M2001-02127-CCA-R3-CD - Filed November 15, 2002**

_____

The defendant, Daniel James Cosgrove, pled guilty in the Bedford County Circuit Court to nineteen felonies and thirty-one misdemeanors. The trial court sentenced him to an effective sentence of twenty-one years and eleven months, twenty-nine days in confinement to be served consecutively to another sentence for which his probation was revoked. The defendant appeals, claiming that the trial court failed to apply and weigh mitigating factors properly and improperly ordered consecutive sentencing. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOE G. RILEY and JAMES CURWOOD WITT, JR., JJ., joined.

Merrilyn Feirman, Nashville, Tennessee (on appeal); Donna Leigh Hargrove, District Public Defender; and Andrew Jackson Dearing, III, Assistant District Public Defender (at trial), for the appellant, Daniel James Cosgrove.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; William Michael McCowan, District Attorney General; and Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to a series of offenses that the defendant committed from January to March 2001. At the guilty plea hearing, the state presented the following factual account of the crimes: In count 1, the defendant was charged with theft of property valued less than $500 after he was found in possession of property that had been taken from a victim's home. In counts 2 and 3, the defendant burglarized a business and took property that was valued at more than $10,000. During a pat down of the defendant, he was found to have ten Dilaudid tablets and a syringe on his person, giving rise to charges of possession of a Schedule II controlled substance and drug paraphernalia in counts 4 and 5. In counts 6 and 7, the defendant was charged with forging and passing a personal check that

belonged to Debra Caldwell and forging and cashing a man's payroll check. In count 8, the defendant was at a car wash and took a man's wallet that contained over $600, resulting in a charge of theft over $500. In counts 9, 10, and 11, the defendant, who pretended to be a police officer, drove up to two Hispanic men, pointed a gun at them, and robbed one of them. For that conduct, he was charged with the aggravated robbery of one man, the aggravated assault of the second man, and impersonation of a police officer. In counts 12 and 13, the defendant broke into a man's house at two different times in one day and took more than 500 videotapes and a VCR, which resulted in charges for theft of property valued over $1,000 but less than $10,000 and theft of property valued less than $500. Counts 14 through 18 resulted from the defendant's leading the police on a high speed chase in Bedford County. During the chase, the defendant's wife and two young children were in the car with him, and he was charged with three counts of felony reckless endangerment, one count of evading arrest, and one count of failing to yield to an emergency vehicle. In counts 19 through 24, the defendant forged and cashed checks that were drawn on the account of Richard and Sally Casteel. Finally, the defendant was charged with 26 counts of passing worthless checks on his personal checking account when the account was closed or contained insufficient funds.

At the sentencing hearing, the then twenty-three-year-old defendant testified that he was married and had a four-year-old daughter and a three-year-old son. He said he became addicted to Dilaudid and committed the crimes in question in order to buy Dilaudid pills. He said that he did not intend to hurt or scare anyone but that Dilaudid had taken control of his life and that he would lie, cheat, or steal to get it. He said that he was injecting Dilaudid eight to ten times per day and that every couple of days, he needed three hundred dollars to buy the drug. He said that his addiction had cost him his family, car, and home.

The defendant testified that in 1998, he donated a kidney to his father and that before becoming addicted to Dilaudid, he worked in restaurants, a framing business, landscaping, and a sawmill. He said that he did not need to spend the rest of his life in prison but that he needed rehabilitation. He said that since he had been in jail, he had not taken any drugs and felt better. He said that he needed someone to teach him how to say no and that he thought in-patient treatment would help him. He said he was sorry for scaring his victims.

On cross-examination, the defendant acknowledged having prior convictions for misdemeanor theft and aggravated burglary. He also acknowledged that he was on probation for the aggravated burglary conviction when he committed the crimes in question. He said that during the time he was committing the current crimes, he was arrested and released on bond twice. He said that each time he was released on bond, he committed more crimes. He said he used all the money he could get from his crimes to buy drugs.

Barry Cosgrove, the defendant's father, testified that since the defendant had been in jail, the defendant had changed. He said that the defendant needed to go through more changes but that he believed the defendant when the defendant said he was willing to get treatment for his addiction and turn his life around. He said that he lived in Wisconsin and that he was willing to help his son. He said that he wanted the trial court to consider the defendant's age and addiction in sentencing the

defendant. On cross-examination, Mr. Cosgrove acknowledged that the defendant did a good job of hiding the addiction from his family.

The state introduced into evidence the defendant's presentence report, which shows that the defendant dropped out of high school in the eleventh grade. According to the report, the defendant did not obtain his GED but attended a technical college. The defendant reported being in good physical and mental health and acknowledged smoking marijuana for several years before he became addicted to Dilaudid. The report shows that the defendant has never gotten treatment for his addiction. The report also reveals that the defendant was convicted of theft of property valued less than $500 in 1997 and aggravated burglary in 1998 and that he was on probation for the aggravated burglary when he committed the current offenses.

The trial court sentenced the defendant as a Range I, standard offender to the following:

| Count | Offense | Offense Classification | Sentence |
|-------|---------|------------------------|----------|
| 1 | Theft of property valued less than $500 | Class A misdemeanor | 11 months, 29 days at 75% |
| 2 | Burglary | Class D felony | 3 years |
| 3 | Theft of property valued more than $10,000 but less than $60,000 | Class C felony | 5 years |
| 4 | Possession of a Schedule II drug with intent to resell | Class C felony | 5 years |
| 5 | Possession of drug paraphernalia | Class A misdemeanor | 11 months, 29 days at 75% |
| 6 & 7 | Forgery less than $500 | Class E felony | 2 years for each count |
| 8 | Theft of property valued more than $500 but less than $1,000 | Class C felony | 2 years |
| 9 | Aggravated robbery | Class B felony | 10 years |
| 10 | Aggravated assault | Class C felony | 5 years, 3 months |
| 11 | Criminal impersonation | Class B misdemeanor | 6 months at 75% |
| 12 | Theft of property valued more than $1,000 but less than $10,000 | Class D felony | 3 years |

| 13 | Theft of property valued less than $500 | Class A misdemeanor | 11 months, 29 days at 75% |
|---|---|---|---|
| 14 - 16 | Felony reckless endangerment | Class E felony | 2 years for each count |
| 17 | Evading arrest | Class D felony | 4 years |
| 18 | Failing to yield to an emergency vehicle | Class C misdemeanor | 30 days at 75% |
| 19- 24 | Forgery | Class E felony | 2 years for each count |
| 25 - 50 | Passing a worthless check less than $500 | Class A misdemeanor | 11 months, 29 days at 75% for each count |

The trial court ordered that the defendant's misdemeanor sentences (counts 1, 5, 11, 13, 18, and 25 through 50) run concurrently for an effective sentence of eleven months, twenty-nine days. The defendant's forgery sentences (counts 6 , 7, and 19 through 24) and sentence for theft of property valued more than $500 but less than $1,000 (count 8) were to run concurrently for an effective sentence of two years. The defendant's sentences for aggravated robbery (count 9); aggravated assault (count 10); burglary (count 2); theft of property valued more than $10,000 but less than $60,000 (count 3); and theft of property valued more than $1,000 but less than $10,000 (count 12), were to run concurrently for an effective sentence of ten years. His sentences for reckless endangerment (counts 14 through 16) and evading arrest (count 17) were to run concurrently for an effective sentence of four years. All of these effective sentences were to run consecutively to each other and to the defendant's five-year sentence for possession of a Schedule II controlled substance with intent to resell (count 4) for a total of twenty-one years and eleven months, twenty-nine days in confinement. Finally, the trial court revoked the defendant's probation that he had been serving for his prior aggravated burglary conviction and ordered that he serve all of his new sentences consecutively to that four-year sentence. The defendant appeals, claiming that the trial court failed to apply and weigh mitigating factors properly and erred by ordering consecutive sentencing.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing

principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The sentence to be imposed by the trial court is presumptively the minimum in the range for a Class B, C, D, or E felony unless there are enhancement factors present. Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(d)-(e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169. We note that the law provides no presumptive minimum for misdemeanor sentencing. See, e.g., State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). However, in misdemeanor sentencing, the trial court must consider the purposes and principles of the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. § 40-35-302(d).

First, the defendant claims that the trial court failed to apply and give proper weight to mitigating factors. Specifically, he claims that the trial court erred by refusing to apply mitigating factor (1), that the defendant's criminal conduct neither caused nor threatened serious bodily injury, to his property crimes and his aggravated robbery and aggravated assault convictions. See Tenn. Code Ann. § 40-35-113(1). In addition, the defendant claims that the trial court erred by failing to find that his drug addiction was a mitigating factor. See Tenn. Code Ann. § 40-35-113(13). The state claims that the trial court properly applied and weighed mitigating factors. We believe the trial court properly sentenced the defendant.

At the sentencing hearing, the trial court applied enhancement factor (1), that the defendant has a previous history of criminal convictions, to all of his convictions. See Tenn. Code Ann. § 30-

35-114(1). In addition, the trial court applied enhancement factor (10), that the defendant had no hesitation about committing a crime when the risk to human life was high, and factor (16), that he committed a crime under circumstances in which the potential for bodily injury to a victim was great, to all of his sentences except those for his aggravated robbery and aggravated assault convictions. See Tenn. Code Ann. § 30-35-114(10), (16). Finally, the trial court applied enhancement factor (13), that the defendant committed the felonies while on probation for a prior felony, and gave it significant weight. See Tenn. Code Ann. § 30-35-114(13).

The trial court stated that it did not believe mitigating factor (1) could apply to the defendant's property crime sentences because "where the defendant's conduct neither caused nor threatened serious bodily injury . . . is inherent in every property crime [or] is included as an element of the offense." The trial court noted, though, that if the mitigating factor applied to those crimes, then the factor was worth very little weight. As to the defendant's claim that his drug addiction was a mitigating factor, the trial court strongly disagreed, finding that the defendant failed to get treatment for his drug addiction when help was available. After weighing the applicable enhancement and mitigating factors, the trial court sentenced the defendant to at least the midpoint in the range of punishment for each felony conviction and the maximum punishment for each misdemeanor.

Initially, we note that because there is no prohibition against "double mitigation," the trial court erred by concluding that it would not apply mitigating factor (1) to the defendant's property crime sentences. State v. Stacy Allen Bullard, No. E1999-00796-CCA-R3-CD, Bradley County, slip op. at 17 (Tenn. Crim. App. Mar. 15, 2000), app. denied (Tenn. Sept. 11, 2000). However, the trial court stated that if it were to apply that mitigating factor, it would give the factor very little weight. We do not believe that the trial court's error as to mitigating factor (1) would have changed the defendant's property crime sentences in this case. Moreover, we do not believe mitigating factor (1) applies to the defendant's aggravated robbery and aggravated assault convictions, because the defendant's use of a gun threatened serious bodily injury to his victims. We also believe the trial court properly refused to find that the defendant's drug addiction was a mitigating factor. As noted by the trial court, the defendant committed fifty crimes over an extended period of time without seeking treatment for his drug problem. The defendant is not entitled to have his drug addiction applied as a mitigating factor and has not shown that the lengths of his sentences are improper.

Next, the defendant contends that the trial court erred by ordering him to serve his effective sentences consecutively. He acknowledges that some consecutive sentencing was required because he committed some of his felony offenses while he was on bond. See Tenn. R. Crim. P. 32(c)(3)(C) (providing for mandatory consecutive sentencing when a defendant commits a felony while released on bail for another offense and the defendant is convicted of both offenses). However, he claims that he should serve the remaining sentences concurrently because an effective sentence of twenty-five years and eleven months, twenty-nine days "in no reasonably way relates to the severity of the offenses committed" and does not reflect the defendant's "true nature."

In ordering consecutive sentencing, the trial court took into account that some of the defendant's sentences for felony convictions had to be served consecutively to other sentences under Tenn. R. Crim. P. 32(c)(3)(C). However, the trial court failed to state its reasons for ordering additional consecutive sentencing. Nevertheless, our <u>de novo</u> review reveals that any consecutive sentencing was appropriate in this case because the defendant committed fifty crimes, an extensive list, while he was on probation for his 1998 aggravated burglary conviction. <u>See</u> Tenn. Code Ann. § 40-35-115(b)(2), (6) (providing for consecutive sentencing if a defendant receives multiple convictions and has an extensive record of criminal activity and is sentenced for an offense committed while on probation). Thus, we conclude that the trial court properly imposed an effective sentence of twenty-one years, eleven months, twenty-nine days and that the defendant has failed to demonstrate that he received an excessive sentence.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE