IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 3, 2003

## STATE OF TENNESSEE v. CALVIN JEROME OLIVER

**Appeal from the Circuit Court for Marshall County**
**No. 14989     Charles Lee, Judge**

---

**No. M2002-02438-CCA-R3-CD - Filed August 21, 2003**

---

The defendant, Calvin Jerome Oliver, pled guilty in the Marshall County Circuit Court to aggravated robbery, a Class B felony; aggravated burglary, a Class C felony; two counts of attempted aggravated robbery, a Class C felony; and three counts of aggravated assault, a Class C felony. The trial court merged his attempted aggravated robbery convictions into his aggravated robbery conviction and sentenced him as a Range II, multiple offender to eighteen years in the Department of Correction (DOC). The trial court sentenced him to seven years for the aggravated burglary conviction and eight years for each aggravated assault conviction, all to be served concurrently to each other but consecutively to the eighteen-year sentence for an effective sentence of twenty-six years in the DOC. The defendant appeals, claiming the trial court erred by refusing to apply and give proper weight to mitigating factors. We affirm the judgments of the trial court, but we remand the case for correction of a clerical error regarding the aggravated burglary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed; Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Larry F. Wallace, Jr., Shelbyville, Tennessee, for the appellant, Calvin Jerome Oliver.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the robbery of Christie Moore. At the defendant's guilty plea hearing, the state gave the following account of the crimes: On the night of March 18, 2002, the victim and her boyfriend were in bed when some men kicked open the victim's back door and forced their way into her home. The victim's boyfriend was awakened, poked in the back with a rifle, and told that

he was going to be shot. The gun also was pointed at the victim, the victim's young daughter, and another woman who was staying in the home. The victim gave the men her pocketbook, and they fled the scene. When the police arrived, they found masks, gloves, and a rifle. The police also stopped a car that they had seen in the area immediately before the crimes and arrested two of the robbers. At some point, the police arrested the defendant, who gave a statement and admitted his involvement in the offenses.

At the sentencing hearing, Christie Moore testified that around midnight on March 18, 2002, she was in bed and heard someone kick open her back door. She said that a man flung open her bedroom door and said, "Where is your money?" She said that another man with a rifle stepped in the room, asked for money, and pointed the gun at her head. She said that she told him she did not have any money and that he threatened to kill her. She said that she went into the living room, turned on the light, and that another man with a pistol told her to turn off the light or he was going to kill her. She said that four male robbers were in the house and that during the robbery, one of them stepped on her five-year-old daughter's puppy. She said that her daughter picked up the puppy and that the robber told her daughter that if she did not make the puppy be quiet they were going to kill her and the dog.

On cross-examination, Ms. Moore testified that she could not say the defendant was one of the robbers because all four of them were wearing masks. She said that the man with the rifle was in the living room with her and that the man with the pistol was in the hallway. She said that a third robber was in the hallway near the second bedroom and that the fourth man was in the kitchen. She could not say which one of the men was the defendant.

Officer James Whitsett of the Lewisburg City Police Department testified that he investigated the robbery. He said that another officer reported seeing a truck in the area and that the officer gave a description of the truck. He said that officers stopped the truck and arrested codefendants Mark Beard and Donald Harris. He said that Mr. Beard and Mr. Harris confessed to the robbery and told the police that the defendant and a juvenile named Chad McClain also had been involved. He said officers found masks in the truck and a rifle near the victim's home. He said that officers contacted the defendant and that the defendant denied being involved in the crimes. He said that about five or six days later, the defendant contacted the police and gave a statement in which he admitted participating in the offenses. In the statement, the defendant also said that he and Mr. Harris stayed outside the house while Mr. Beard and Mr. McClain went inside and robbed the victim. He said that the codefendants also gave statements and that some of them said the defendant had entered the house.

Judy Byrd from the Parole and Probation Department testified that she prepared the defendant's presentence report. She said that the defendant had many prior convictions, including theft of property valued more than $1,000, delivery of a Schedule II controlled substance, theft of property valued less than $500, car theft, and evading arrest. She said the defendant also had juvenile adjudications for theft of property valued more than $500 but less than $1,000 and that he was on probation and parole when he committed the offenses in question.

Jerry Freeman, the Executive Director of the Lewisburg Housing Authority, testified for the defense that the defendant was a tenant on his property and that he knew the defendant when the defendant was very young. He said the defendant and his family were not normal. He said that the Department of Human Services (DHS) posted a list on the family's front door telling the family how to live and care for themselves.

Tiffany Cox testified that she used to date the defendant. She said that the defendant's brain did not function normally, that he acted much younger than his age, and that he preferred to associate with teenagers. She said that the defendant was a very nice person and that he had never shown violence toward her. On cross-examination, Ms. Cox testified that she had known the defendant for about one year and that he did not use alcohol or drugs. She said that she would be surprised to learn that he had a prior conviction for delivering a Schedule II drug. She acknowledged that the defendant knew right from wrong but said that he did not think before he acted.

Shawn Oliver, the defendant's cousin, testified that the defendant did not use his best judgment to make decisions and was influenced easily. He said that the defendant had never gotten into trouble by himself and that he had never seen the defendant act violently. On cross-examination, he acknowledged that he was not present during the offenses in question or during any of the defendant's other crimes. He acknowledged having prior convictions for simple possession and theft of property valued less than $500.

Tyeann Brown testified that the defendant was a friend of her daughters, sons, and cousins and had visited her house frequently. She said that although the defendant was an adult, he was immature for his age. She said that the defendant was respectful and that she had never known him to be violent.

Latasha O'Neil testified that she used to be the defendant's neighbor. She said that the defendant would come to her for advice and that he would stay at her house in order to stay out of trouble. She said the defendant often talked to himself and needed mental help. She said that the defendant was not a bad person and wanted to be loved. On cross-examination, she said that the defendant did not get angry often and that he did not stay at her house after the robbery.

Codefendant Mark Beard testified that during the robbery, the defendant stayed in the front of the victim's house, did not have a weapon, and did not threaten the victim. On cross-examination, he said that he did not remember any of his codefendants protest committing the robbery. He acknowledged giving a statement to the police in which he said that as he and his three codefendants walked toward the victim's home, the defendant and Wayne Harris walked in the front of the group and that either the defendant or Mr. Harris kicked in the victim's back door. He also acknowledged stating that the defendant and Chad McClain had demanded money from the victim.

The defendant testified that he went to Wayne Harris's house and that Mr. Harris told him about a woman who had received eighty thousand dollars. He said that Mr. Harris wanted to rob the

woman but that he, Mr. McCLain, and Mr. Beard refused. He said that Mr. Harris kept insisting that they rob the victim. He said that Mr. Harris, Mr. Beard, and Mr. McClain left Mr. Harris's house and returned with a rifle. He said that he and his three codefendants got into a truck and drove to the victim's house. He said that one of his codefendants kicked in the door and that he stayed at the door while his codefendants went inside. He said that Chad McClain threatened the victim's daughter with a rifle and that he was very sorry for the robbery. He also said that he needed mental health treatment and that he attended mental health classes while in prison. On cross-examination, the defendant testified that he did not understand what was going on. He said that the day before his sentencing hearing, he was in court for a violation of probation hearing and got mad and cursed during the hearing.

According to the presentence report, the then twenty-four-year-old defendant dropped out of high school after the eleventh grade but participated in some type of higher education program. The report shows that the defendant also has completed anger management and substance abuse programs. In addition to the prior convictions reported by Ms. Byrd, the report reflects that the defendant has been convicted of evading arrest, criminal impersonation, assault, and car burglary. The report shows that the defendant has juvenile adjudications for theft of property valued more than $1,000 but less than $60,000, theft of property valued more than $500 but less than $1,000, theft of property valued less than $500, joyriding, criminal trespassing, and shoplifting.

The trial court merged the two attempted robbery convictions into the aggravated robbery conviction. It determined that the defendant should be sentenced as a Range II offender and that the following enhancement factors applied to all of the defendant's convictions:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> (3) the offenses involved more than one victim;
>
> (8) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;
>
> (10) the defendant had no hesitation about committing a crime when the risk to human life was high;
>
> (13) The felony was committed while [the defendant was on probation or parole]; [and]
>
> (20) the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult.

<u>See</u> Tenn. Code Ann. § 40-35-114(1), (3), (8), (10), (13), (20) (Supp. 2001) (amended 2002).[1] The trial court also applied enhancement factor (16), that "the crime was committed under circumstances under which the potential for bodily injury to a victim was great," to his aggravated burglary conviction. <u>See</u> Tenn. Code Ann. § 40-35-114(16) (Supp. 2001) (amended 2002). The trial court gave little weight to enhancement factor (10) but determined that the remaining enhancement factors, especially factors (1), (8), and (13), were entitled to great weight. As to mitigating factors, the trial court determined that factor (13) applied because the defendant gave statements to the police and because the defendant "has got a problem." <u>See</u> Tenn. Code Ann. § 40-35-113(13). However, the trial court did not give great weight to these factors.

The trial court noted that as a Range II offender, the defendant's range of punishment was twelve to twenty years for the aggravated robbery conviction and six to ten years for the aggravated burglary and aggravated assault convictions. <u>See</u> Tenn. Code Ann. § 40-35-112(b)(2), (3); <u>see also</u> Tenn. Code Ann. § 40-35-210(c) (providing that the presumptive sentence for a Class B or C felony is the minimum in the range if no enhancement or mitigating factors are present). For the aggravated robbery conviction, the trial court enhanced the defendant's sentence to nineteen years and then reduced it by one year to eighteen years. The trial court sentenced the defendant to seven years for the aggravated burglary conviction and eight years for each aggravated assault conviction. The trial court held that the aggravated burglary and aggravated assault sentences would run concurrently to each other but consecutively to the aggravated robbery sentence on the basis that the defendant's criminal history was extensive. <u>See</u> Tenn. Code Ann. § 40-35-115(b)(2).

On appeal, the defendant argues that the trial court erred by refusing to apply the following mitigating factors:

> (2) The defendant acted under strong provocation;
>
> (4) The defendant played a minor role in the commission of the offense;
>
> (8) The defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor; and
>
> (12) The defendant acted under duress or under the domination of another person, even though the duress or the domination of another person is not sufficient to constitute a defense to the crime.

---

[1] The legislature's 2002 amendment to Tenn. Code Ann. §40-35-114 added as the new enhancement factor (1) that the "offense was an act of terrorism" but changed the existing enhancement factors only by increasing their designating number by one.

See Tenn. Code Ann. § 40-35-113(2), (4), (8), (12). In addition, the defendant claims that the mitigating factors applied under factor (13) were entitled to more weight. The state claims that the trial court properly sentenced the defendant. We agree with the state.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. §§ 40-35-401(d) and -402(d). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigation and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

The sentence to be imposed by the trial court for a Class B or C felony is presumptively the minimum sentence in the range when there are no enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and then reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

The defendant claims that he is "mildly mentally retarded" and that the trial court should have applied mitigating factors (2), that he acted under strong provocation, and (8), that he was suffering from a mental condition that significantly reduced his culpability for the offense, because of his mental problem. Although the trial court determined that the defendant "is not right," it ruled that his mental condition did not rise to a level that would excuse or justify his behavior. Several defense witnesses testified that the defendant is immature for his age, talks to himself, and is easily influenced. However, the defendant presented no expert testimony to support his claim that he is mildly mentally retarded. We do not believe the evidence preponderates against the trial court's findings.

Regarding factor (4), that he played a minor role in the commission of the offense, the defendant claims that the trial court should have applied this factor because Mark Beard testified that the defendant waited in front of the victim's home during the robbery and did not have a weapon. However, the trial court refused to apply factor (4) because of conflicts in the witnesses' testimony and in statements codefendants gave to police regarding the defendant's role in the offenses. Although Mr. Beard testified on direct that the defendant stayed in the front of the house, did not have a weapon, and did not threaten the victim, he acknowledged giving a statement to police in which he said that the defendant demanded money from the victim and may have kicked open the victim's door. We note that the prosecutor claimed that the trial court should apply enhancement factor (2), that the defendant was a leader in the commission of the offense, but that the trial court concluded the defendant's role as a leader or as a minor participant could not be determined from the testimony. See Tenn. Code Ann. § 40-35-114(2) (2001) (amended 2002). We agree and conclude that the defendant is not entitled to the application of mitigating factor (4).

Finally, the defendant claims that the trial court should have applied mitigating factor (12), that he acted under the domination of another person, to his sentences because the testimony established that he is a "follower" and because the other defendants "used him to assist them in the commission of this offense." While Wayne Harris may have offered the idea about robbing the victim, the defendant never testified that he acted under the control of any of his codefendants. Moreover, in Mark Beard's statement to police, he said that the defendant walked in front of the group as they approached the victim's house and that the defendant may have kicked in the victim's door. The record does not support the application of this factor, and the trial court did not err by refusing to apply it to the defendant's sentences.

The defendant claims that the trial court should have given more weight to the mitigating factors applied under factor (13), the catch-all provision. However, as stated above, as long as the trial court followed the sentencing purposes and principles, the weight to be afforded an existing factor is left to the trial court's discretion. We believe the evidence justifies the trial court's assessment.

Based upon the foregoing and the record as a whole, we affirm the judgments of conviction. We note that for count two, aggravated burglary, the judgment of conviction states that the defendant pled guilty to attempted aggravated burglary. Therefore, we remand the case to the trial court in

order for the trial court to correct the judgment to reflect that the defendant pled guilty to aggravated burglary.

_____
JOSEPH M. TIPTON, JUDGE