IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 12, 2008

## STATE OF TENNESSEE v. ANDREW MICHAEL RODRIGUEZ

**Appeal from the Circuit Court for Hardeman County**
**No. 07-01-0499     J. Weber McGraw, Judge**

---

**No. W2008-00694-CCA-R3-CD  - Filed May 4, 2009**

---

A Hardeman County grand jury indicted the defendant, Andrew Michael Rodriguez, for one count of rape of a child, a Class A felony. The defendant entered a best interest plea to one count of sexual battery by an authority figure, a Class C felony, with an agreed sentence of six years as a Range I, standard offender. The manner of service of the sentence was left to the discretion of the trial court. Following a sentencing hearing, the trial court denied the defendant's request for judicial diversion, probation, or other alternative sentencing and ordered the defendant's sentence to be served in the custody of the Department of Correction. In this appeal as of right, the defendant argues that the trial court erred in denying his request for probation or alternative sentencing. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P.  3 Appeal as of Right;  Judgment of the Circuit Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Gary F. Antrican, District Public Defender; and David S. Stockton, Assistant District Public Defender, attorney for appellant, Andrew Michael Rodriguez.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joe L. VanDyke, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

## OPINION

The record on appeal does not include the guilty plea submission hearing. However, we are able to glean from the testimony presented at the sentencing hearing sufficient facts surrounding the offense to which the defendant pled guilty. The victim's stepmother, Robin Trout McKay, testified that on March 9, 2007, she and her husband, the victim's father, picked up the victim and her two brothers for visitation at about 5:00 p.m. The victim was five years old at that time. The family went home, enjoyed dinner together and, sometime around 8:00 p.m., Ms. McKay remarked that it was time to give the kids a bath and get them ready for bed. As she went into the bathroom and tried

to take off the victim's shirt, she recalled that the victim "went ballistic."  She said the victim had never acted like that before so she told her husband to leave the bathroom so she could "handle this."

As she was bathing the victim, she noticed that her vaginal area "was blood raw red."  Next, Ms. McKay recounted how she learned what had happened to the victim.  She stated that

> I knew then that something was wrong, it was not right.  So I got her out of the tub.  [The victim] and I went in the living room, sat down in my recliner.  She said she was cold so I had to go get her Tinker Bell blanket, covered her up.  I told Dewayne, the children's father, I said "Go give the two boys a bath and let me talk to [the victim] for a few minutes."

> I asked her, I said, "Baby," I said "has somebody been touching your private spot?" And she just kind of dropped her head.  I said, "Sweetie, it's okay.  You're not going to get in trouble."  I said, "Has someone been touching your private spot?"  That child looked up at me and said, "Jabbo."

Ms. McKay testified that "Jabbo" was the nickname the victim used for the defendant, who was engaged to the victim's mother and living in the mother's household at the time of the offense.

Ms. McKay told the victim's father about her report.  The couple called family members to stay with the other children while they took the victim to the emergency room.  A medical examination revealed "an adult finger-sized rip in [the victim's] hymen."  Ms. McKay testified that the victim had not been around the defendant anymore since the offense, but she said that the victim continued to make remarks about the defendant being "a bad man" whom she would "beat up" when she was grown.  Since the offense, the victim was removed from the custody of her mother and placed in a grandmother's custody.  Ms. McKay stated that there has been an improvement in her demeanor because she is now more open and talkative.

Officer Sharif Savahl of the Bolivar Police Department testified that he was called to the emergency room to investigate the offense in this case.  He recalled that he was present when a nurse asked the victim what had happened and the victim replied, "Jabbo touches me with his fingers."  He also stated that medical records obtained as part of the investigation indicated that the victim's hymen was not intact and that she had suffered some minor external irritation as well.

Kathy Rodriquez[1], the defendant's mother, testified that she and the defendant picked up the victim and her siblings from school sometime before 3:00 p.m. on the day of the offense.  She recalled that the victim left school screaming and that "[s]he came out of there quite often screaming."  When they got home, the defendant remarked that he could not "take another day of these fits [the victim] throws" so he took some medication and went to sleep in the living room.  Ms.

---

[1] The defendant's name is spelled Rodriguez on the indictment.  However, the transcript reflects that his name, as well as his mother's name, is spelled Rodriquez.  For the purposes of this opinion, we adhere to the spelling as listed in the indictment when referring to the defendant.

Rodriquez recalled that the victim was sent to her room for twenty to forty minutes so she could calm down. Once she calmed down, she came out of her room, apologized to Ms. Rodriquez, and went outside to play with her brothers. Ms. Rodriquez testified that the defendant was asleep on the couch during this time and that there was no way he could have touched the victim that afternoon. Regarding sentencing, she stated that the defendant would be allowed to continue to live with her if granted some sort of probation.

The defendant testified that he put the victim down for a nap as soon as they got home from school and then he took medication and fell asleep. His next recollection was of the victim's father arriving to pick up the children for visitation. He agreed to continue with any recommended medications or treatment as a condition for alternative sentencing. He also acknowledged calling an out-of-state friend and remarking that he might be going to prison for a long time but explained that he said that because he was afraid and did not want to be convicted of something he did not do.

At sentencing, the defendant argued that he should receive judicial diversion, probation or house arrest based upon his lack of a criminal history and the psychosexual report which indicated the defendant was a low-risk for re-offending. The State correctly noted that a conviction for sexual battery by an authority figure was statutorily ineligible for judicial diversion. Additionally, the State argued that the defendant "need[ed] to go to jail for a long time" because "I have no doubt . . . that that child's hymen had been penetrated" and the State had only offered the plea to a lesser charge to avoid "the damage to a six year old child putting her on the stand to testify in a rape case."

The trial court denied the defendant's request for judicial diversion, finding that the defendant was not eligible for, much less entitled to, diversion. The trial court noted that the parties agreed to the six-year, Range I sentence as part of the guilty plea agreement. The trial court recognized that the defendant does not have a criminal history. However, the trial court also noted that the psychosexual report indicated that the defendant was not a good candidate for treatment because he had not acknowledged any guilt for the offense. Regarding whether the defendant could abide by terms of probation, the trial court noted that the defendant's bond had been revoked during the pendency of this case because of the statements made to his out-of-state friend. Finally, the trial court opined that a grant of full probation would "unduly depreciate the seriousness of this type of offense." Based upon these findings, the trial court denied all alternative sentencing and ordered the sentence to be served in the custody of the Department of Correction.

ANALYSIS

The defendant argues that he was presumed a favorable candidate for probation or alternative sentencing and that the trial court erred in ordering his sentence to be served in confinement. The State contends that the defendant has waived this issue by failing to provide an adequate record on appeal. Tenn. R. App. P. 24(a). Alternatively, the State contends that the trial court appropriately denied probation or other alternative sentencing in this case.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2006). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant

to show that the sentence is improper.  This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred.  State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) the potential for rehabilitation or treatment, and (8) any statistical data provided by the Administrative Office of the Courts relative to statewide sentencing practices for similar offenses. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

We note that the defendant committed this offense in March 2007; therefore, he was sentenced under the 2005 revisions to the Criminal Sentencing Act.  A defendant receiving a sentence of ten years or less is eligible for probation, subject to certain exclusions not applicable to the defendant's case.  Tenn. Code Ann. § 40-35-303(a).  However, contrary to the defendant's argument, the defendant is no longer presumed to be a favorable candidate for alternative sentencing under the revisions to the Sentencing Act and his consideration for alternative sentencing is now an advisory sentencing guideline.  Tenn. Code Ann. § 40-35-102(6) (a mitigated or standard offender convicted of a class C, D, or E felony "*should be considered* as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary . . . . *A court shall consider, but is not bound by, this advisory sentencing guideline*") (emphasis added).   The burden remains upon the defendant to establish suitability for probation or alternative sentencing.  Tenn. Code Ann. § 40-35-303(b).

Initially addressing the State's argument that this issue is waived for the defendant's failure to provide an adequate record, the State correctly notes in its brief that the guilty plea submission hearing, presentence report, and psychosexual evaluation report are absent from the record on appeal. While this court has been able to discern many of the facts surrounding this offense based upon the testimony provided at the sentencing hearing, we note that the trial court relied heavily upon the presentence report and psychosexual evaluation report in making its determination to deny probation and alternative sentencing.  Accordingly, our de novo review is significantly hampered by the defendant's failure to provide these items in the record on appeal.  It is the duty of an appellant to provide a complete record on appeal.  State v. Troutman, 979 S.W.2d 271 (Tenn. 1998).  Without a complete record, we are precluded from doing a proper review and we must presume that the trial court's determination were correct.  See State v. Ballard,, 855 S.W.2d 557 (Tenn. 1993); State v. Oody, 823 S.W.2d 554 (Tenn. Crim. App. 1991).  Furthermore, we conclude that the record supports the trial court's denial of alternative sentencing in this case based upon the facts and circumstances apparent from the record provided.  Therefore, the judgment of the trial court is affirmed.

CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed.


_____
D. KELLY THOMAS, JR., JUDGE