# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 18, 2011

## STATE OF TENNESSEE v. CHRISTINE CAUDLE

**Appeal from the Circuit Court for Williamson County**
**No. II-CR094394      Timothy L. Easter, Judge**

**No. M2010-01172-CCA-R3-CD - Filed December 8, 2011**

The Defendant, Christine Caudle, pled guilty to reckless endangerment with a deadly weapon and theft of merchandise over $500, Class E felonies. See T.C.A. §§ 39-13-103, 39-14-146 (2010). She was sentenced as a Range II, multiple offender to three years for each conviction, to be served concurrently. On appeal, she contends that the trial court erred by failing to apply applicable mitigating factors and by failing to grant probation or an alternative sentence. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, J., joined. JEFFREY S. BIVINS, J., filed a concurring opinion.

Vanessa P. Bryan, District Public Defender (on appeal); James L. Elkins, III, Assistant Public Defender (on appeal); and Judson Phillips, Nashville, Tennessee (at trial), for the appellant, Christine Caudle.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Kim Helper, District Attorney General; and Mary Katharine White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to a theft at a department store and the Defendant's attacking a store employee. The record on appeal does not contain a transcript of the guilty plea hearing, but the record reflects that the Defendant entered her guilty pleas on February 8, 2010. At the sentencing hearing, Tracy Mavity testified that on December 17, 2008, she worked as a loss prevention employee for JCPenney. Her duties included detecting shoplifting and apprehending shoplifters. She saw the Defendant enter the store with another female while

a male waited outside. She said that the Defendant concealed merchandise while in the store and that she confronted the Defendant when the Defendant left the store. After Ms. Mavity identified herself as a store employee, the Defendant grabbed her hair and told the other female to run. Ms. Mavity said that she screamed at the Defendant to let go of her hair but that the Defendant did not. A car pulled up as they fought, and the Defendant dragged Ms. Mavity toward the car. She said that after she was pulled partially into the car, the Defendant told the driver to "gun it." Ms. Mavity was pulled several hundred feet and eventually thrown from the car.

Ms. Mavity testified that she broke her right arm, her knee, and her little finger and that she hurt her left shoulder. She had surgery to repair injuries to her knee and was unable to work for months. She said that she continued to see a doctor due to the emotional stress caused by the attack and that she lost her job due to her medical problems. She had no doubt that the Defendant was the person who attacked her.

On cross-examination, Ms. Mavity agreed that she was officially terminated from her job for being insubordinate to a store manager but testified that she thought her termination was a direct result of the incident with the Defendant. She agreed the incident with the store manager occurred after she returned to work, almost a year after the incident with the Defendant. She said the Defendant was very aggressive and pulled her hair. She said she remembered the incident well and denied that she hit her head during the incident. She acknowledged her medical records stated that she suffered a head fracture.

On redirect examination, Ms. Mavity agreed that the store paid for her medical expenses and that none of the stolen merchandise was recovered. On recross-examination, Ms. Mavity testified that she paid less than $100 of her medical expenses.

Samuel L. Anderson testified for the defense that he was the Defendant's pastor and that he had known the Defendant since she was a baby. He said that he saw a "tremendous change" in the Defendant over the previous year and that she was getting "her life together." He said she went to school, brought her children and other young people to church, and helped at the church. He said that her character had changed and that she no longer got into trouble.

On cross-examination, Pastor Anderson testified that although he had known the Defendant's family for many years, he became personally acquainted with the Defendant about a year earlier when she began attending his church. He said that although the Defendant spoke with him about her life and her problems, she never mentioned the incident at JCPenney. He did not know anything about the Defendant's criminal record or drug use, where she attended school, or where she worked.

Yolanda Foster testified that she was the Defendant's best friend and that they had known each other since childhood. She said the Defendant changed dramatically during the previous year. She said the Defendant stopped drinking alcohol, began attending church, went to school, and worked as a secretary at a car detailing business. She said the Defendant was a different person and no longer associated with "negative people."

On cross-examination, Ms. Foster acknowledged that the Defendant was charged and convicted of theft after the incident in this case. She said Ms. Mavity did not remember the incident correctly because the other female was the person who attacked Ms. Mavity, but agreed the Defendant pled guilty to the crimes. She did not know if the Defendant helped the police find the other two people involved with the theft.

Kimberly Williams testified that she was a good friend of the Defendant. She said the Defendant changed over the previous year. She said they attended church, attended school, and worked together. She said that if the Defendant were granted probation, the Defendant would comply with all probation conditions and would not violate the law.

On cross-examination, Ms. Williams agreed that the Defendant had been placed on probation many times. She did not know the Defendant was on probation in December 2008. She said the Defendant gave her and her children a place to live when she was homeless.

The Defendant testified that she was twenty-six years old, that she earned her GED certificate, and that she attended college. She said she had five children. She agreed she had a criminal history and said that she got into trouble and made bad choices when she spent time with "the wrong crowd," but that she no longer associated with those persons. She said she did not use drugs. She said that she, Janetta Hill, and Nathaniel Bass went to JCPenney with the intention of stealing from the store, but that it was Ms. Hill who fought with Ms. Mavity. She said that Ms. Mavity held onto Ms. Hill's hair as they drove away and that no one yelled, "gun it."

The Defendant agreed that she was arrested again after the incident in this case but testified that she subsequently enrolled in school, began working as a secretary at a car detailing shop, and attended church. She said she spoke to young people at church to help them avoid the mistakes she made. She said she hoped to further her education and become a counselor in order to help children. She agreed she was previously placed on probation but said that if she were granted probation, she would not violate the law again.

On cross-examination, the Defendant agreed that she had four theft convictions, one of which occurred two months after the crimes in this case, that she "jumped bail" in June 2004, and that she previously failed a drug test and had her probation revoked. She agreed

she had pending court dates in Kentucky for a felony theft charge and a probation violation. She agreed she had used marijuana, cocaine, and Lortab pills but said she had not used drugs in over a year. She agreed that at the time she committed her crimes, she knew that she would lose custody of her children and would no longer receive food stamps and other government assistance if she were sentenced to confinement.

The Defendant agreed that she gave the police the names of the two persons involved with the theft in this case. She could not remember the name of the officer to whom she gave the information, but said she voluntarily gave the names to an officer when she was "booked into custody." She said she also mentioned the names to her attorney. She agreed that the indictment stated she committed the crimes with an "unidentified" black male and female and that the presentence report stated, "no co-defendants have been officially identified in this case." She agreed that she had not paid restitution and that she did not apologize to Ms. Mavity but she said she was sincerely sorry for what happened to Ms. Mavity. She said that although she violated the terms of her probation in the past, she believed she could comply with the terms of probation if it were granted in this case.

On redirect examination, the Defendant testified that she did not fight with Ms. Mavity or drive the car that fled the store. She said she attempted to help Ms. Mavity by forcing Ms. Hill to release Ms. Mavity.

The trial court found enhancement factors (1), (6), (8), and (13) applicable. See T.C.A. §§ 40-35-114(1) (2010) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"), -114(6) ("The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great"), -114(8) ("The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community"), -114(13) (at the time the felony was committed, the defendant was released on probation). The trial court found mitigating factor (13) applicable because the Defendant was attempting to "get her life turned around" by attending school and working. See T.C.A. § 40-35-113(13) (2010). In denying probation and an alternative sentence, the trial court found that confinement was necessary to protect society by restraining the Defendant, who had a long history of criminal conduct. The trial court also found that confinement was necessary to avoid depreciating the seriousness of the offense and the Defendant's outrageous conduct and to provide an effective deterrence to others likely to commit similar offenses. The Defendant was sentenced as a Range II, multiple offender to three years for each conviction, to be served concurrently. This appeal followed.

The Defendant contends that the trial court erred by failing to apply applicable mitigating factors and by failing to grant probation or an alternative sentence. The State

contends that we should dismiss this appeal because the Defendant failed to file a timely notice of appeal and, alternatively, that the trial court properly sentenced the Defendant. We note, however, that the Defendant has failed to include a transcript of the guilty plea hearing in the record and hold that this failure precludes a de novo review of her sentences and requires this court to presume that the evidence supported the sentences.

In conducting a de novo review, we must consider (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2010); see State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

On appeal, the Defendant was required to prepare a record that conveyed a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of the appeal. T.R.A.P. 24(b); State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). The 1989 Sentencing Act, as amended, requires a sentencing court to consider evidence received at the trial. T.C.A. § 40-35-210(b)(1). With a guilty plea involving a felony, the evidence supporting the plea and finding of guilt is usually submitted by proffer or stipulation. "For those defendants who plead guilty, the guilty plea hearing is the equivalent of trial . . . ." State v. Keen, 996 S.W.2d 842, 843 (Tenn. Crim. App. 1999).

This court considers the guilty plea hearing transcript to be vital to a de novo review and potential resentencing by this court as required by law. See, e.g., State v. Alfred Gettner, No. E2010-00104-CCA-R3-CD, Sullivan County, slip op. at 6 (Tenn. Crim. App. Aug. 19, 2011); State v. Felix Tamayo, No. M2010-00800-CCA-R3-CD, Davidson County, slip op. at 3-4 (Tenn. Crim. App. May 16, 2011); State v. Gary M. Carter, No. M2006-02341-CCA-R3-CD, DeKalb County, slip op. at 4 (Tenn. Crim. App. Feb. 21, 2008); T.C.A. § 40-35-401 (2010). The "'failure to include the transcript of the guilty plea hearing in the record prohibits the court's conducting a full de novo review of the sentence under [Tennessee Code Annotated section] 40-35-210(b).'" State v. Farmer, 239 S.W.3d 752, 756 (Tenn. Crim. App. 2007) (quoting State v. Shatha Litisser Jones, No. W2002-02697-CCA-R3-CD, Madison County, slip op. at 4 (Tenn. Crim. App. July 14, 2003)). No matter how developed a record may appear, we will never know the full extent unless the guilty plea transcript is included. "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence."

State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); see also State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).  The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON,  PRESIDING JUDGE