FILED

07/24/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 10, 2017

**STATE OF TENNESSEE v. CLAUDE DAVID POWERS**

**Appeal from the Circuit Court for Montgomery County**
**No. CC-15-CR-968     William R. Goodman III, Judge**

_____

**No.  M2016-02019-CCA-R3-CD**
_____

The Defendant, Claude David Powers, pleaded guilty in the Montgomery County Circuit Court to aggravated assault, a Class C felony.  *See* T.C.A. § 39-13-102 (2014) (amended 2015).  The trial court sentenced the Defendant as a Range I, standard offender to four years, with one year to serve in confinement and the remainder to serve on probation.  On appeal, the Defendant contends that (1) his four-year sentence is excessive and (2) the trial court erred in denying his request for full probation.  Because the trial court failed to place the appropriate findings of fact and determinations on the record as required by our sentencing laws, we remand the case to the trial court for a new sentencing hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Joshua W. Etson, Clarksville, Tennessee, for the appellant, Claude David Powers.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Chris Dotson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In September 2015, the Defendant was indicted for attempt to commit first degree murder and aggravated assault.  Pursuant to the plea agreement, the Defendant pleaded guilty to aggravated assault, the State dismissed the attempted murder charge, and the trial court would determine the length and manner of service of the sentence.  The transcript of the guilty plea hearing is not included in the appellate record.

At the sentencing hearing, the presentence report was received as an exhibit. The report showed previous convictions for three counts of public intoxication, two counts of driving under the influence of an intoxicant, two counts of vandalism, assault, domestic assault, reckless driving, driving with a suspended license, and resisting arrest. The report also showed two previous probation violations.

The presentence report showed that the Defendant obtained his GED, that he reported only one previous employer, and that he intended to work for a construction company if he received probation. The Defendant had previously completed drug and alcohol awareness classes. At the time of the presentence investigation, the Defendant was undergoing Suboxone treatment for opiate addiction. He reported good mental health and excellent physical health. He reported first drinking alcohol at age fifteen and drinking one beer weekly at the time of the presentence investigation. The report noted that the investigator believed the Defendant "fabricated" his alcohol-related responses because of the Defendant's history of alcohol-related criminal conduct. The Defendant reported first abusing prescription opiates at age twenty-seven.

The Defendant submitted a written statement to the presentence investigator explaining the night of the incident. In the statement, the Defendant explained that earlier that evening, he had been at an acquaintance's home, that he left, and that he walked home. He said that after being home for about thirty minutes to one hour, he began walking to a nearby convenience store to purchase cigarettes and beer. He said that during the walk to the store, he was approached by the victim and another man the Defendant identified as Tim. The Defendant explained that the men

> walked up to me and seemed like everything was normal. Then immediately they demanded that I give them whatever I had whether it was drugs or money. So I said "Hell no." That's when [the victim] pulled a knife on me. When this happened the other man named Tim ran off to the side of the building so I took out my pocket knife in the intent to [persuade] him to stop what he was doing and back off. But he did not[. He] took his weapon and tried to thrust it into my chest area. So what happened next was my first instinct which was stop him to get him off of me. And I did so to keep him from coming at me. I believe that I pricked him 2 times in the abdomen area. When this happened he dropped to the ground and lay[] there. So I was really scared and shaking so I ran to my house. I tried to tell my wife what happened but I was hysterical. She was trying to help me breathe and calm down. Before I could even get to a phone to explain to police what had happened. They were already at my front door knocking, looking for me. Then I was escorted downtown. I never wanted any harm to come of this man. I wish that I could change the outcome of this offense, and maybe handled the situation in a better manner.

-2-

Tony Bush, the victim, testified that on the evening of April 25, 2015, he and Tim went to his visit their friend, Tammy. The victim said that he, Tim, Tammy, and Tammy's daughter were at Tammy's home and that the Defendant arrived late that night. The victim said that everyone was drinking alcohol and was having fun. He said that the Defendant asked if the victim could acquire drugs for the Defendant and that the victim made arrangements to obtain cocaine. The victim said that the Defendant gave the victim money, that the victim left for about five minutes, that the victim returned with cocaine and gave it to the Defendant, and that the Defendant left.

The victim testified that the Defendant returned to Tammy's home about twenty-five minutes to one hour later, that the Defendant wanted "fifty more" because the cocaine "wasn't that good," that the victim obtained more cocaine, that the victim gave the cocaine to the Defendant, and that the Defendant left. The victim said that the Defendant returned a third time ten or fifteen minutes later and that everyone socialized until daylight. The victim said that around 6:00 a.m., the Defendant asked Tim to drive the Defendant to purchase beer, that the victim mentioned he saw the Defendant's wife looking out her front door for the Defendant, who lived nearby, and that Tim drove the Defendant home.

The victim testified that the Defendant returned to Tammy's home about ten minutes later, that "the girls" told the victim to tell the Defendant that "he had to leave" because the girls were scared of the way the Defendant was talking and behaving, and that the Defendant left but returned. The victim said that previously the Defendant had entered the home through the front door but knocked on the back door this time. The victim said that the girls told him not to allow the Defendant inside, that the Defendant said he wanted "thirty more," and that the victim and the Defendant left the home and began walking toward the victim's friend's "building." The victim said that the next thing he knew, the Defendant was stabbing him with a knife. The victim said that he and the Defendant struggled, that the victim got away, that the Defendant caught him and stabbed him again, and that the Defendant stabbed him four times. The victim said the Defendant "ran off" toward the Defendant's home. The victim denied pulling a knife and said he did not carry knives.

The victim testified that after the stabbing, he ran to his home, told his wife what occurred, grabbed a towel for the bleeding, and walked to Tammy's home and told her to call the police. He said that when the paramedics were taking him to the ambulance, he told them that the Defendant stabbed him and that the Defendant was standing beside the police car. The victim denied attempting to rob the Defendant.

On cross-examination, the victim testified that the last time the Defendant returned to Tammy's home to purchase drugs, the Defendant showed the victim money before the victim left the home and began walking with the Defendant. The victim denied knowing

-3-

why the Defendant stabbed him. The victim said that although he was bleeding heavily, he walked to Tammy's home to inform her of the stabbing and to ask her to call the police. He said that his wife had a telephone and probably called the police but that he wanted to let his friends know the Defendant had stabbed him. The victim denied possessing cocaine when the stabbing occurred and discussing with his wife what he would tell the police. He agreed that he was on probation for a drug-related offense at the time of the stabbing and the sentencing hearing and that he had a previous theft conviction.

The victim testified that he was also known as Tommy Bush and that he told the investigating officer that his name was Tommy. When counsel suggested that the victim told the police his name was Tommy instead of Tony to escape detection that he was on probation, the victim said his identification reflected his name as Tommy, not Tony. The victim said that he had not socialized much with the Defendant before this incident, although they lived in the same area. The victim said he had not sold the Defendant drugs before this incident.

The trial court found that no mitigating and enhancement factors applied. *See* T.C.A. §§ 40-35-113 (2014); 40-35-114 (2014). The court noted that the victim's testimony reflected the victim was, at a minimum, a drug delivery person and was possibly a drug dealer. The court found that this case was "perhaps" related to a dispute regarding the quality or quantity of the cocaine. The trial court, without explaining its rationale, sentenced the Defendant to four years, with one year to serve in confinement and the remainder to serve on probation. This appeal followed.

The Defendant contends that his sentence is excessive and that the trial court should have granted his request for full probation. The State responds that no error in sentencing occurred. We conclude that a new sentencing hearing is required because the trial court failed to place on the record any of its findings and determinations supporting the length and manner of service of the Defendant's sentence.

This court reviews challenges to the length and manner of service of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§

-4-

40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors is reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (2014). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant who otherwise qualifies for probation or alternative sentencing to incarceration when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2014); *see Trotter*, 201 S.W.3d at 654.

The record does not reflect that the trial court considered any of the purposes and principles of sentencing in determining the length and manner of service of the Defendant's sentence. Although the trial court thought the offense was the result of a drug-related dispute and found, without elaboration, that no mitigating and enhancing factors applied, the court made no findings supporting its imposition of a four-year sentence with split confinement. The record does not reflect that the court considered the presentence report, the evidence presented at the guilty plea hearing, counsel's arguments, the nature of the Defendant's conduct, his statement during the presentence investigation, his social history, his physical and mental health, his potential for rehabilitation, or the deterrent effect of the sentence. *See* T.C.A. §§ 40-35-102, -103, -210; *Ashby*, 823 S.W.2d at 168; *Moss*, 727 S.W.2d at 236. In essence, the court failed to state its reasoning for imposing the Defendant's sentence "in order to ensure fair and consistent sentencing." T.C.A. § 40-35-210(e).

Furthermore, the record reflects that the Defendant was eligible for probation because the sentence imposed was less than ten years. *See id.* § 40-35-303(a). Likewise, he was a favorable candidate for probation based upon his standard offender classification, although a trial court is not bound by this advisory sentencing guideline. *See id.* § 40-35-102(6)(A), (D). However, the record does not reflect that the court considered any of the appropriate principles in denying the Defendant's request for full probation. *See id.* § 40-35-103(1)(A)-(C). The court did not discuss the Defendant's criminal history, whether confinement was necessary to avoid depreciating the seriousness of the offense, or whether measures less restrictive than confinement had been applied unsuccessfully to the Defendant. *See id.*

Based upon the trial court's failure to state on the record the relevant findings of fact and conclusions of law in determining the length and manner of service of the Defendant's sentence, we cannot afford the court's determinations a presumption of reasonableness. *Bise*, 380 S.W.3d at 705. Our supreme court has stated that when a trial court fails to place on the record its reasons for imposing a sentence pursuant to Tennessee Code Annotated section 40-35-210(e), as we have concluded in this case, "the more appropriate course of action . . . may be to remand to the trial court" for a new sentencing hearing because proper appellate review is prevented. *Id.* at 705 n.41. Therefore, we conclude that it is necessary to remand this case in order for the trial court to consider all of the purposes and principles of sentencing and to place its findings of fact and reasoning on the record for imposing a particular sentence.

In consideration of the foregoing and the record as a whole, we affirm the Defendant's conviction but remand the case to the trial court for further proceedings consistent with this opinion.

_____
ROBERT H. MONTGOMERY, JR., JUDGE