IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Knoxville July 25, 2017

**STATE OF TENNESSEE v. RICO CARTER WHISNET**

**Appeal from the Circuit Court for Hardeman County**
**No. 15-CR-156      J. Weber McCraw, Judge**

_____

**No. W2016-02173-CCA-R3-CD**

_____

The Defendant, Rico Carter Whisnet,[1] was convicted by a Hardeman County Circuit Court jury of delivery of less than 0.5 gram cocaine, a Class C felony, and delivery of 0.5 gram or more of cocaine, a Class B felony. *See* T.C.A. § 39-17-417 (2014). The trial court sentenced the Defendant as a Range II, multiple offender to concurrent terms of eight and sixteen years in confinement. On appeal, the Defendant contends that the trial court erred in its application of the mitigating and enhancement factors and by imposing more than the minimum sentence. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

Coleman W. Garrett and Claiborne H. Ferguson, Memphis, Tennessee, for the appellant, Rico Carter Whisnet.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Mike Dunavant, District Attorney General; and Joe VanDyke, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to two controlled drug purchases conducted by the Hardeman County Sheriff's Office on July 11 and July 14, 2014. At the trial, Hardeman County Sheriff's Office Narcotics Investigator Jason Wilson testified that he had been involved in about 100 narcotics cases during his career and had worked with confidential informants. Investigator Wilson and Captain Greg Moore had received complaints that the Defendant

_____
[1] The record reflects various spellings of the Defendant's name. We have chosen the spelling contained in the indictment and the judgments.

was selling drugs. Investigator Wilson arranged for controlled drug purchases by an experienced confidential informant. Investigator Wilson said that he had worked with this confidential informant on numerous other controlled drug purchases and that the confidential informant was reliable. The condfidential informant was paid for his assistance in each transaction.

The officers gave the confidential informant a video camera, hidden in a keychain, to record the transactions. The video recordings are not included in the appellate record, however, the recordings of both transactions were played for the jury. During the viewing of the recordings, Investigator Wilson identified the Defendant's car, home, and voice. In the recording of the first transaction, the confidential informant identified the Defendant by name and greeted the Defendant's mother. The confidential informant returned to the investigators with a "baggie" of what appeared to be crack cocaine. Investigator Wilson said that during the second controlled drug purchase, the confidential informant met with the Defendant at a designated location. The confidential informant again returned with a baggie of what appeared to be crack cocaine. The substances were sent to the Tennessee Bureau of Investigation (TBI) laboratory for analysis. The analyses concluded that the substances were cocaine base.

On cross-examination, Investigator Wilson testified that Captain Moore searched the confidential informant before the first transaction occurred. Investigator Wilson acknowledged that the video recording of the first transaction did not show the exchange of drugs and money but said that the exchange was audible in the recording. Investigator Wilson admitted that the confidential informant stopped to purchase gas on the way to meet the Defendant and left the camera in the car while at the gas station. Investigator Wilson said that the confidential informant stopped a second time before meeting with the Defendant to "get his money right." Investigator Wilson admitted that the recording did not show the confidential informant during the second stop. Investigator Wilson said that the recording of the second controlled drug purchase did not show the exchange of drugs and money but that the exchange was audible in the recording.

Hardeman County Sheriff's Office Captain Greg Moore testified that he had assisted Investigator Wilson during both controlled drug purchases. Captain Moore stated that he searched the confidential informant and the confidential informant's car before and after both transactions and that nothing was discovered during the searches.

The confidential informant testified that he had worked as a confidential informant for approximately three or four years. He admitted that he had an extensive criminal history. The confidential informant said that he had participated in about seven or eight controlled drug purchases with Investigator Wilson. He said that he met with Investigator Wilson and Captain Moore before the first transaction. The confidential informant said that he travelled

to the Defendant's home, that he purchased crack cocaine from the Defendant, and that he placed the crack cocaine in his pocket. The confidential informant said he gave the crack cocaine to Investigator Wilson.

The confidential informant testified that he met the Defendant at the designated location for the second transaction. The confidential informant stated that the Defendant was sitting in a car when he arrived, that he got in the Defendant's car, and that he purchased crack cocaine. The confidential informant said he gave the crack cocaine to Investigator Wilson.

On cross-examination, the confidential informant testified that he was related to the Defendant, that he had not been recruited to serve as a confidential informant, and that he was "already working" when approached by investigators. He said that the Defendant was known for selling drugs. The confidential informant said that he was not employed other than as a confidential informant.

TBI Special Agent Forensic Scientist Peter Hall testified that he analyzed the substance submitted for analysis from one of the transactions. He said that the substance tested positive for cocaine base and weighed 0.64 gram.

TBI Special Agent Forensic Scientist Shalandus Garrett testified that she analyzed the substance submitted for analysis from the other transaction. She said that the substance tested positive for cocaine base and weighed 0.20 gram.

Upon this evidence, the Defendant was convicted of delivery of less than 0.5 gram of cocaine and delivery of 0.5 gram or more of cocaine. This appeal followed.

The Defendant contends that the trial court erred by ordering more than the minimum sentences, arguing that the court failed to consider the mitigating factors and misapplied the enhancement factors. The Defendant asserts that the court should have applied mitigating factors (7) and (13) because the Defendant was motivated by a desire to provide for his family, was enticed to commit the crime by his cousin, and suffered from psychological disabilities. *See* T.C.A. § 40-35-113 (7), (13) (2014) ("The defendant was motivated by a desire to provide necessities for the defendant's family[.]") ("Any other factor consistent with the purposes of this chapter."). He also argues that the court should not have considered the Defendant's previous drug convictions, which occurred more than ten years before the present offenses, in applying enhancement factor (1). *See* T.C.A. § 40-35-114(1) (2014) (amended 2015, 2016, 2017) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]"). The State responds that the court did not abuse its discretion. We agree with the State.

At the sentencing hearing, the presentence report was received as an exhibit and reflected that the Defendant was age thirty-four and had two children who did not live with him. The Defendant's mother reported that the Defendant had received mental health treatment previously and that he attended a behavioral health center monthly for medication and counseling. The Defendant reported poor physical and mental health, including diabetes, high cholesterol, high blood pressure, acid reflux, and anxiety. He reported taking medication for those conditions. The Defendant reported alcohol use beginning at age seventeen and stated that he drank a "fifth" of cognac every two days. He reported that he began using marijuana at age fourteen and cocaine at age twenty-four and that he had used both drugs every other day until his incarceration.

The presentence report reflected the Defendant had previous convictions for twenty-two traffic violations, three cocaine-related convictions, two misdemeanor possession of marijuana convictions, and an assault conviction. The report showed that the Defendant's probation was revoked previously in one of his cocaine-related covictions.

The Defendant testified that he had never been employed and that he had received Social Security Disability benefits for psychological problems for more than ten years. The Defendant said that he had psychological problems as a child. He stated that he graduated from high school and that he took special education courses while in school. The Defendant said that he took Ritalin and Paxil for his psychological problems. He stated that at the time of the offenses he lived with his mother and that he had lived with her all of his life.

On cross-examination, the Defendant testified that he had two prior convictions for selling narcotics. The Defendant said that he owned the car seen in the video recording of the second transaction but that he could not drive. When asked whether he had previously claimed in court that he was indigent, the Defendant responded, "I got a mom too. She could have bought that vehicle." The Defendant stated that a previous attorney represented him without a fee and that he had not paid trial counsel in the current case.

The trial court considered the evidence presented at the trial and the sentencing hearing, the presentence report, the principles of sentencing, the arguments regarding sentencing alternatives, the nature and characteristics of the criminal conduct, evidence relative to mitigating and enhancement factors, the Defendant's statement, and the Defendant's potential for rehabilitation or treatment. The court found that the Defendant was a Range II, multiple offender. The court found that mitigating factor (1) applied based upon the nature of the offense. *See id.* § 40-35-113 (1) ("The defendant's criminal conduct neither caused nor threatened serious bodily injury[.]"). The court found that enhancement factor (1) applied. *See* T.C.A. § 40-35-114(1) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]").

The trial court found that although the Defendant's criminal history was lengthy, most of the offenses were "minor driving offenses." The court found that consecutive sentencing was not appropriate. In determining the length of the sentences and whether probation was appropriate, the court considered that the Defendant had been placed on probation previously and that it had not "been an effective deterrent." The court sentenced the Defendant to concurrent terms of eight and sixteen years at 35% service.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors is reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

The record reflects that the Defendant and the State agreed that the Defendant was a Range II, multiple offender. The trial court considered the appropriate purposes and principles of sentencing, including the applicable mitigating and enhancement factors. The court's determination relative to the Defendant's prior criminal history and enhancement factor (1) is supported by the record. The presentence report reflects that the Defendant had three previous cocaine-related convictions, as well as several misdemeanor drug and assault convictions. In addition, the Defendant had previously received probation, which was later revoked. The sentencing range for a Class B felony for a Range II offender is twelve to twenty years, and the sentencing range for a Class C felony is six to ten years. *See* T.C.A. 40-35-112(b)(2), (b)(3) (2014). The Defendant's sentences were within the appropriate

range, and the court's determinations are supported by the record. The record reflects that the court properly applied the purposes and principles of the Sentencing Act. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE